**UNION PAVING CO. v. UNITED STATES.**

**No. 48241.**

United States Court of Claims.

Oct. 6, 1953.

**180**

Herman J. Galloway, Washington, D. C., King & King, Washington, D. C., on the brief, for plaintiff.

Mary K. Fagan, Washington, D. C., Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

Plaintiff seeks to recover $24,400, which it alleges was wrongfully and illegally assessed against it by the defendant as liquidated damages for its alleged delay in completing various portions of work within certain interim periods specified under a contract, whereby the plaintiff company constructed the piers and abutments for the Pit River Bridge in northern California, at the site of the Shasta Dam.

The erection of this bridge was part of a much larger project undertaken by the Bureau of Reclamation, Department of Interior, known as the Central Valley Project, in the State of California, which was to provide for the storage of water, through the construction of the Shasta Dam, for irrigation purposes and for the development of hydroelectric power. The principal structure for the entire project was the Shasta Dam and Power Plant. The erection of this dam required the relocation of parts of various railroads, highways, and public utility lines, within the area of the dam-site. As a result, in addition to the contract for the construction of the dam itself, various other contracts, including the one here in suit, were entered into by the Bureau of Reclamation, acting for the United States, and hereinafter referred to as the defendant, in order to relocate the above mentioned facilities. In its supervision of the entire project the defendant undertook to coordinate the planning, timing and progress of the work under these various contracts, and the invitation for bids, the specifications, and the contract in this case were prepared and drafted with these things in mind.

The contract in question resulted from the necessity to relocate the main line of the Southern Pacific Railroad and U. S. Highway 99, both of which when relocated would run through an area which was to be the reservoir for the storage of water accumulated by the Shasta Dam. Since the dam would store water in the reservoir to a depth of 500 feet

it was necessary by the erection of a bridge to raise the roadbed of the railroad and the highway at least that height above the ground level. The construction of this bridge which would span the Pit River was a major undertaking, and it was necessary that this work be completed in a comparatively short period of time in order to permit the erection of the Shasta Dam on schedule. The plaintiff's contract related only to the construction of the abutments and piers for the Pit River bridge structure. Until the relocation of the railroad was completed, operations on the dam and power plant would be restricted to construction work which could be performed without endangering the original roadbed of the railroad.

On September 1, 1939, the defendant invited bids on a competitive basis, for the construction of the abutments and piers for what has now become known as the Pit River Bridge. The invitation for such bids stated in part as follows:

"The work shall be commenced within thirty (30) calendar days after date of receipt of notice to proceed and the various parts of the work shall be completed within periods of time varying from one hundred and twenty (120) to five hundred (500) calendar days from the date of receipt of such notice, as provided in the specifications."

The specifications, drawings, and the standard form of contract, were furnished to bidders with the invitation for bids. The plaintiff, a Nevada corporation with its principal office in San Francisco, California, submitted a bid in response to this invitation for bids and the specifications referred to, in which bid it alleges that although it agreed to complete all work within 500 days it did not agree to adhere to the interim completion dates referred to in the invitation and specifications. This bid was not introduced into evidence and the parties have stipulated that it was lost or destroyed and could not now be produced. The invitation, the specifica-

tions, and the contract, called for completion of *all work* within 500 days.

The plaintiff's bid was accepted, and on November 4, 1939, the contract for the construction of the abutments and piers was executed. The contract provided that the work was to be commenced and completed in conformity with paragraph 21 of the specifications. These specifications provided in part as follows:

"The contractor shall begin work within thirty (30) calendar days after date of receipt of notice to proceed and shall complete the various parts of the work within the number of calendar days from the date of receipt of notice to proceed, as follows:

"Abutments 1 and 2, within one hundred and twenty (120) calendar days;

"Pier 1, within one hundred and eighty (180) calendar days;

"Pier 2, within two hundred and twenty (220) calendar days;

"Abutments 3 and 4 and piers 8, 9, and 10, within two hundred and forty (240) calendar days;

"Pier 3, within two hundred and eighty (280) calendar days;

"Piers 6 and 7, within four hundred (400) calendar days;

"Pier 5, within four hundred and fifty (450) calendar days; and

"Pier 4, within five hundred (500) calendar days.

"The contractor shall at all times during the continuance of the contract prosecute the work with such forces and equipment as, in the judgment of the contracting officer, are sufficient to complete it within the specified periods of time. The contractor's construction program shall be subject at all times to the approval of the contracting officer. The capacity of the construction plant, sequence of operations, and method of operation shall be such as to insure the completion of the

work within the specified periods of time. The contractor's plant shall be located and operated so as not to interfere with the erection of the superstructure of the bridge."

The invitation for bids and this provision of the specifications are very clear and positive, and the evidence of record shows that the purpose of the defendant in providing for the interim completion dates, as to the various piers and abutments, was to enable the construction of the bridge's superstructure, under another contract, to proceed in a prescribed manner from both approaches or abutments toward the center piers. This was in keeping with the defendant's efforts to coordinate all work to be performed under various contracts.

Paragraph 22 of the specifications further provided for the assessing of liquidated damages in the sum of $100 per day for each day of delay in completing the various portions of the work within the time limitations set forth in paragraph 21 of the specifications, above set forth. The plaintiff did not, in its bid or at any time prior to completion of all work, make any specific objection or reservation as to the interim completion dates.

Notice to proceed under the contract was issued by the defendant's contracting officer on December 8, 1939, and received by plaintiff on December 9, 1939. However, the plaintiff had actually commenced work under the contract on November 16, 1939. The written notice to proceed expressly fixed specific dates in conformity with paragraph 21 of the specifications for the completion of the various abutments and piers. Finding 15. The various portions of the work were completed as shown in Finding 16. It is the failure of the plaintiff to complete abutments 1 and 2, and piers 2 and 3, within these interim time limitations, as thereafter extended by the contracting officer, which gave rise to this law suit. Findings 16 and 24.

Article 9 of the contract provided in part as follows:

" * * * That the right of the contractor to proceed shall not be terminated or the contractor charged with liquidated damages because of any delays in the completion of the work due to unforeseeable causes beyond the control and without the fault or negligence of the contractor, including, but not restricted to, acts of God, or of the public enemy, acts of the Government, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, and unusually severe weather or delays of subcontractors due to such causes, if the contractor shall within 10 days from the beginning of any such delay (unless the contracting officer, with the approval of the head of the department or his duly authorized representative, shall grant a further period of time prior to the date of final settlement of the contract) notify the contracting officer in writing of the causes of delay, who shall ascertain the facts and the extent of the delay and extend the time for completing the work when in his judgment the findings of fact justify such an extension, and his findings of fact thereon shall be final and conclusive on the parties hereto, subject only to appeal, within 30 days, by the contractor to the head of the department concerned or his duly authorized representative, whose decision on such appeal as to the facts of delay and the extension of time for completing the work shall be final and conclusive on the parties hereto."

Upon the plaintiff's failure to complete the specified portions of its work within the interim completion dates, the contracting officer assessed liquidated damages from time to time, as called for by the contract, for each day of delay and withheld the amounts so computed from payments made to plaintiff:

during the progress of the work. The plaintiff filed protests to such actions by the contracting officer under the above provision, objecting to the assessment of the liquidated damages, and requesting that time extensions be allowed because of severe weather conditions. By a change order the contracting officer had previously allowed 25 additional days for the completion of abutments 1 and 2. On October 15, 1940, the contracting officer issued findings of fact which extended the time for the completion of each of the various piers and abutments an additional 17 days. Finding 16. These extensions were based on delays caused by the severe weather conditions which existed from December 1939 through April 1940. See Findings 17–22. The plaintiff appealed to the head of the department (Finding 23) on the basis of these findings, alleging that the extensions of time allowed by the contracting officer were not adequate. On August 8, 1942, the contracting officer's findings were affirmed (Finding 23) by the head of the department.[1] The plaintiff continued in its efforts to secure what it believed to be adequate time extensions and once again filed objections with the contracting officer. In these later requests the plaintiff in addition to calling attention to the heavy rainfall asserted, for the first time, that its work had been delayed by the interference of another contractor, the failure of the defendant to supply aggregate for the mixing of concrete when requested by the plaintiff, and a carpenters' strike. In answer to these objections the contracting officer on November 7, 1942, issued findings of fact (Finding 24) which permitted the following additional extensions of time:

"(a) For completing abutments Nos. 1 and 2, no additional time.

"(b) For completing pier 1, fourteen (14) calendar days' additional time.

"(c) For completing pier 2, three (3) calendar days' additional time.

"(d) For completing abutments Nos. 3 and 4, and piers 8, 9, and 10, twelve (12) calendar days' additional time.

"(e) For completing pier 3, twenty-five (25) calendar days' additional time.

"(f) For completing piers 6 and 7, no additional time.

"(g) For completing pier 5, no additional time.

"(h) For completing pier 4, forty-nine (49) calendar days' additional time."

These extensions were based on weather conditions which prevailed subsequent to April 1940, and the carpenters' strike which the contracting officer found delayed plaintiff's progress. Plaintiff's other claims were found to be without merit. Finding 24.

Plaintiff then filed a motion requesting a reconsideration by the department head of his decision of August 8, 1942, which affirmed the contracting officer's findings of October 15, 1940. At the same time plaintiff appealed from the contracting officer's findings of November 7, 1942. On July 3, 1943, the head of the department once again affirmed the findings of the contracting officer, and dismissed the appeal. Finding 25.

The plaintiff then filed a motion for a reconsideration of this decision. This resulted in the decision of October 11, 1945, by the head of the department, in which he concluded, upon an interpretation of the contract, that the plaintiff was not bound by the interim completion dates, and held that since plaintiff had completed all work under the contract within the 500 days as extended, all liquidated damages should be remitted. Nothing in this decision altered the findings which had been made by the contracting officer as to the facts of delay, which findings had been previously affirmed, as above mentioned. Finding 27.

However, the Comptroller General refused to remit the sum of $24,400, which

[1]. The decisions on appeal are referred to throughout this opinion as decisions by the head of the department even though they were actually rendered by his duly authorized representatives as permitted under Article 9 of the contract.

had been withheld as a result of the plaintiff's failure to complete abutments 1 and 2, and piers 2 and 3, within the completion dates as extended and revised by the contracting officer. Plaintiff then instituted this suit to recover that amount.

The plaintiff contends (1) that the decision of the head of the department of October 11, 1945, which ruled that all liquidated damages be remitted, was final and conclusive under the terms of the contract and binding on this court under United States v. Wunderlich, 342 U.S. 98, 72 S.Ct. 154, 96 L.Ed. 113; (2) that if such decision is not binding, this court should nevertheless hold, as a matter of law, that the plaintiff was not bound by the interim completion dates; and (3) that if the decision is not a final and conclusive one, and if the plaintiff is held to be bound by the interim completion dates, then the court, upon looking to all the facts of record and to the merits of the plaintiff's claims, should hold that on the evidence presented all delays which resulted were excusable under the terms of Article 9 of the contract and not chargeable to the plaintiff.

Defendant alleges (1) that the decision of October 11, 1945, by the head of the department was based on a question of law, that is, an interpretation of the contract; is not a final and conclusive one within the meaning of Article 9 of the contract, and is not, therefore, binding on this court; and (2) that since that decision is not binding, the prior decisions of the head of the department which considered and affirmed the contracting officer's findings of fact were final and conclusive, within the terms of Article 9, and binding on this court under the principle of the Wunderlich case, supra.

The Wunderlich case, supra, held that if the parties agree that the decision of the head of the department shall be final and conclusive on questions of fact, such agreement precludes the courts from going behind that decision in the absence of a showing of arbitrariness or acts approaching conscious wrong doing on the part of the defendant.

■ The plaintiff, in urging that the October 1945 decision of the department head is final and conclusive under the contract, attempts to show that what was decided by that ruling was really nothing more than a fact question, i. e., that as a matter of fact the plaintiff excepted from its bid compliance with the interim completion dates and hence it did not as a matter of fact agree to them. We cannot agree with this contention. A reading of the administrative head's decision of October 11, 1945, shows quite clearly (Finding 27) that this decision was based on an interpretation of the contract, and, therefore, comes within the classification of a determination of a question of law. As such, it was not the type of ruling made final by the contract or one to which the Wunderlich limitation could attach. It was not a final and conclusive decision under Article 9 of the contract which gives finality to a decision by the head of the department only as to "facts of delay." Rogers v. United States, 99 Ct. Cl. 393, 408; Callahan Construction Co. v. United States, 91 Ct.Cl. 538, 616.

Having held that the October 1945 decision of the department head is not final and conclusive, the next issue presented is whether, as a matter of law, the plaintiff was bound by the interim completion dates. Plaintiff contends that it is not bound by those dates because it excepted compliance therewith from its bid, and that as a result it was the intention of both parties at the time the bid was accepted that those time limitations were not to apply. The record does not support this claim. All that appears is that the plaintiff in its bid stated that it would complete all work within 500 calendar days. It made no exception as to the interim completion dates. We think plaintiff's bid was consistent with the invitation for bids and paragraph 21 of the specifications, and that plaintiff so intended at the time it filed its bid, and that both parties so intended when they executed

the contract. Defendant meets this allegation of plaintiff with the assertion that it is the contract which is to govern and since the interim completion dates are included in it, the plaintiff is bound by them regardless of what its bid may have contained.

▮ Because of the plaintiff's failure to produce the bid, and on the evidence presented, we have found, as a fact, that no exception to the interim completion dates was made by the plaintiff in its bid. Finding 6.

Even in the absence of such a finding, we believe that the plaintiff is bound by the interim completion dates because (1) of their inclusion in the invitation for bids, the specifications, and the executed contract; and (2) the acts of the parties throughout the performance of the contract and the facts of record in this case support the conclusion that the plaintiff took no exception to such completion dates, and from the beginning believed itself bound by the interim time limitation.

▮ The terms and conditions of the contract and not the preliminaries to its execution, must govern the rights of the parties. Manufacturers' Casualty Insurance Co. v. United States, 63 F. Supp. 759, 105 Ct.Cl. 342, 352. No basis has been shown for a reformation of the contract. If the bid and contract are contradictory, the contract, if not ambiguous, must control.

▮ The notice to proceed called the contractor's attention to the interim dates and fixed specific dates for completion of the various abutments and piers. The plaintiff acknowledged receipt of this notice to proceed and did not question the listing of the completion dates as being in any way contrary to its bid, or the contract. Throughout the course of the work, plaintiff referred to these dates when requesting extensions of time (Finding 21), and did not at any time prior to the opinion of October 11, 1945, question the right of the contracting officer or the head of the department to apply them, on the

ground that it was not bound thereby. Acts of the parties under a contract prior to the time when the contract becomes subject to controversy, are to be given considerable weight in interpreting the contract, A. K. Chahroudi v. United States, 124 Ct.Cl. 792, and cases there cited.

Included in the decision of October 11, 1945, was the conclusion by the head of the department that the provision in the contract permitting the assessment of liquidated damages was in the nature of a penalty clause and hence invalid. In support of this, the decision pointed to the absence of any proof of actual damages on the part of the defendant. In a case such as this, proof of actual damage is not necessary. However, it is quite apparent here that the various abutments and piers would have to be completed on schedule in order to permit the construction of the bridge's superstructure to proceed as planned. The relocation of the railroad, which depended on the completion of the bridge, was required before full scale construction work on the dam itself could proceed. Coordination of the planning, timing and progress of the work under the contracts on the project was of vital importance to the defendant. Defendant's representatives on numerous occasions called the plaintiff's attention to its slow progress and the adverse effect that it would have on the other contracts which were based upon the anticipated completion of plaintiff's work. Finding 18. The contractor for the Shasta Dam became concerned over the slow progress of the plaintiff and notified the defendant that failure to have the bridge completed as planned would result in his claiming damages from the defendant. His satisfactory progress depended on completion of the bridge as scheduled.

▮ The planned coordination of all work under the various contracts would make it difficult, if not impossible, to determine what actual damage might result if delays were encountered. The circumstances were therefore appropriate for the inclusion of a liquidated dam-

186

age provision in the contract. Sun Printing & Publishing Association v. Moore, 183 U.S. 642, 662, 22 S.Ct. 240, 46 L.Ed. 366. The absence of proof of actual damage is not sufficient of itself to defeat the validity of a provision for liquidated damages. Weathers Bros. Transfer Co. v. United States, 109 Ct. Cl. 310, 320.

Defendant contends that if we find, as we have, that the October 1945 decision of the administrative head is not final and conclusive under Article 15 of the contract we must then, under Article 15, look to his prior decisions in both of which he affirmed the contracting officer's findings of fact. The defendant urges that those decisions, since their ruling as to the facts was not altered by the subsequent decision, constituted the head of the department's final and conclusive decision within the terms of Article 9 and, under the Wunderlich principle, binding on this court.

The plaintiff, on the other hand, asserts that if we fail to accept the October 1945 decision as final and conclusive then there is no decision of the administrative head at all, and we are free to look to the merits of the plaintiff's claims unaffected by any findings which the contracting officer or head of the department may have made. Plaintiff argues in support of this view that when it sought a reconsideration of the prior decisions of the head of the department, it resubmitted the entire matter once again for his decision; that as a result of this reconsideration, the decision of October 11, 1945, which supplanted any and all prior rulings and must stand in the record of this case as the only remaining effective ruling by the head of the department. Plaintiff would have us accept that decision or none at all.

We cannot agree with this position. The contracting officer charged the plaintiff with delays which he did not find to be excusable under Article 9 of the contract. That article set forth the procedure which was followed by the plaintiff in objecting to the refusal of the contracting officer to grant what it believed to be adequate time extensions. It provided that an appeal could be taken to the head of the department *"whose decision on such appeal as to the facts of delay and extension of time for completing the work shall be final and conclusive on the parties hereto."* (Italics supplied.) Thus, under this article the decision of the head of the department was to be one based on a consideration of the "facts of delay" and it was only a decision as to those facts which he was entitled to make with any finality. The October 1945 decision was not one as to the "facts of delay" and was, therefore, not a decision within the meaning of Article 9. The head of the department had the privilege, if he so desired, of interpreting the contract, but his only ruling, as contemplated by Article 9, was his prior decisions which upheld and affirmed the contracting officer's findings as to the facts. We must accept those rulings as being the decision of the head of the department, within the meaning of Article 9.

Under Wunderlich, we are bound by the prior decision of the head of the department which upheld the contracting officer's findings, to the effect that adequate time extensions had been granted for all delays found to be excusable under Article 9 of the contract. Those findings of the contracting officer are supported by substantial evidence, and there does not appear in the record any of the circumstances which might free the plaintiff from the limitation of the rule announced in United States v. Wunderlich, supra. Plaintiff's petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and MADDEN and WHITAKER, Judges, concur.