Charles H. BLANCHARD, Jr., doing business as Blanchard Construction Company

v.

The UNITED STATES.

No. 376–59.

United States Court of Claims.
June 11, 1965.

Travis Brown, Washington, D. C., for plaintiff.

Frances L. Nunn, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM.

■ This case was referred pursuant to former Rule 45(a), now Rule 57(a), to Trial Commissioner Saul Richard Gamer with directions to make findings of fact and recommendation for a conclusion of law. The commissioner has done so in an opinion and report filed on April 10, 1964. Plaintiff and defendant filed exceptions to the commissioner's report, briefs were filed by the parties, and the case was submitted to the court on oral argument of counsel. Since the court is in agreement with the findings and recommendation of the commissioner, subject to the deletion of two sentences, it adopts the same, as amended, and as hereinafter set forth, as the basis for its judgment in this case. The plaintiff is therefore entitled to recover and judgment is entered for plaintiff in the sum of thirty-six thousand seven hundred fifty-seven dollars and forty-eight cents ($36,757.48). Defendant's counterclaim is dismissed.*

OPINION OF COMMISSIONER

A construction contractor here complains that the Government deprived him of $75,000 worth of timber which, under his contract, rightfully belonged to him. The contract called for a certain wooded part of the project area to be cleared, and plaintiff contends that, under a proper interpretation of the applicable specification provisions, the timber generated by such clearing operations belonged to him.

Plaintiff's contract with the Eglin Air Force Base in Florida called for the construction of a "Bombing Range." Certain structures had to be erected, and some 4,000 acres of land had to be cleared. About 1,000 acres thereof were, in addition, required to be grubbed. Generally, clearing consisted of cutting the trees no higher than 12 inches above the ground, and grubbing consisted, in addition, of the removal of all stumps and large roots.

Sheets 1 and 2 of the contract drawings delineated, by legends consisting of hatch and cross-hatch lines within boundary lines, the specific areas which were to be cleared only, and to be both cleared and grubbed. Sheet 1 referred to the "Cleared Area" and the "Cleared and Grubbed Area." Sheet 2 referred to the "Area to be Cleared to Stumps Only" and the "Area to be Cleared & Grubbed." Sheet 3 described the outside boundaries of the rectangular area to be cleared only by arrows leading to the words "Limits of Clearing to Stumps Only," and, within such limits, another rectangular area, the boundary lines of which were similarly designated as "Limits of Clearing & Grubbing."

The outside boundaries of these two distinct areas were also visibly marked out on the project site.

The specification provision about which the controversy revolves reads as follows:

SECTION II
CLEARING AND GRUBBING

\* \* \* \* \* \*

2-04. DISPOSAL OF CLEARED AND GRUBBED MATERIAL:

(a) *Merchantable Timber.* All timber from within the limits specified to be cleared and grubbed measuring 8 inch diameter and larger at breast height shall be trimmed of limbs and tops and stock piled at locations within the area as designated by the Contracting Officer. This timber shall remain the property of and will be disposed of by the Government. All the other merchantable timber shall become the property of and shall be disposed of by the contractor.

Stein Bros. Mfg. Co. v. United States, 162 Ct.Cl. 802 (1963), and later decisions to the same effect.

---

* There was no objection to *de novo* evidence at the trial in the court. The court can therefore consider all the evidence including that produced *de novo*.

Plaintiff contends that he reasonably construed this provision as retaining in the Government the title to the 8 inch and larger trees "within the limits" of the area specified on the drawings to be both "cleared and grubbed", i. e., the cross-hatched area, and as vesting in the contractor, pursuant to the provisions of the last sentence that "All the other merchantable timber shall become the property of * * * the Contractor," the title to the trees of such dimension within the limits of the other area specified on the drawings to be cleared only, i. e., the hatched area. It seems clear that plaintiff is correct.

There were two distinct areas for the clearing and grubbing operations. In one, only clearing was to be done. In the other, both clearing and grubbing were to be done. The only places where a contractor could ascertain the "limits" of these different areas were the drawings and the marked boundaries on the site itself. As to this there is no dispute. A previous paragraph, 2–02, of the same section of the specifications, which described the requirements of the "Clearing" operation in detail, specifically referred the contractor to a certain drawing (Sheet 26) to ascertain the areas "designated by cross-hatching" for a special type of clearing operation.[1] Accordingly, when paragraph 2–04(a), being the only paragraph specifying what timber was to belong to whom, used, in describing the timber to belong to the Government, the almost identical area language as was used on the drawings, the contractor naturally thought the timber in the other area belonged to him. The specification said "all timber from within the limit specified to be cleared and grubbed * * * shall remain the property of * * * the Government." The drawings used the exact "cleared and grubbed" phrase, as distinct from "clearing only," and Sheet 3, designating the "Limits of Clearing and Grubbing," used the almost identical language of 2–04(a). "Limits specified" could rationally refer only to the areas and boundaries shown on the drawings, and "cleared and grubbed" reasonably meant the "cleared and grubbed" area shown on the drawings, which specified such area in such exact language and as separate and distinct from the "cleared only" area. Certainly plaintiff's reading of the specification is logical and natural.

Defendant argues that when paragraph 2–04(a) referred to the timber "within the limits specified to be cleared and grubbed," it referred to the entire project area because the whole area had to be cleared, including the part to be grubbed also. It contends it should not therefore be necessary for the provision in question to refer to "clearing only" and "clearing and grubbing," as two distinct operations. It points out that other parts of section II of the specifications, which include paragraph 2–04(a), make no distinction between "clearing only" as one operation, and "clearing and grubbing" as another.

However, the language of each part of the specifications must be studied in its particular context. Where other parts of the specifications, including the other paragraphs of section II, headed "Clearing and Grubbing," used these terms separately, and defined them, and made no reference to areas or geographical limits, there was no need to use the separate terminology of the drawings. The different operations themselves, as operations, were being defined. But when 2–04(a) referred to ownership of certain timber in certain areas as defined on drawings, and used the same area language as the drawings, a different situation is presented. It is not an operation that is here being discussed. It is, instead, a geographical demarcation. It could also be pointed out that where, as under "Statement of Work," the specifications themselves referred to these operations in connection with areas, it did use the terms "Clearing" and "Clearing and Grubbing" separately. But most importantly, these separate and distinct terms were so used on the drawings to which 2–04(a) obviously sent the reader.

---

1. In these particular areas, trees less than 13 feet in height were to be left standing.

Secondly, if indeed all the 8-inch timber in the entire project area was intended to belong to the Government, as defendant maintains, it would have been extremely easy to say so directly and clearly. Defendant's reading of 2–04(a) is certainly a most confusing and roundabout way of expressing that simple thought. Paragraph 2–04(a) in its original form defined "merchantable timber" as being 6 inches in diameter measured one foot above the ground (commonly referred to as "saw logs"), and then specifically said "All merchantable timber shall remain the property of the Government." This was simple language easy to understand and which could lead to no controversy. The amended paragraph which is here involved was issued in the form of an addendum. This addendum seemingly reserved the saw logs in a certain defined area to the Government and then added the new sentence, "All the other merchantable timber shall become the property of and shall be disposed of by the Contractor." Now, says defendant, that new sentence was meaningless for it gave the contractor nothing.[2] This is hardly a fair construction. If all that was intended to be accomplished by the new provision was, as defendant maintains, to change the 6 inches to 8, and elevate the place of measurement from one foot above the ground to breast height, it would have been easy indeed to make these simple changes and still retain the language about all the merchantable timber belonging to the Government, and not confound bidders by changing the entire section, using "limits" and area language identical to that on the drawings, eliminating the sentence about all the timber belonging to the Government, adding a new sentence indicating that this time contractors were to get some saw logs, and then informing them that, despite all these changes, all the saw logs still belonged to the Government anyway.

■■ At the most, even taking defendant's interpretation as a possible one, the provision would have to be considered ambiguous. However, plaintiff's interpretation was certainly a reasonable one—indeed, everything considered, much the more reasonable—and such construction should therefore, under familiar principles of contract interpretation relating to resolving ambiguities against the drafter, be adopted. WPC Enterprises, Inc., v. United States, 323 F.2d 874, 876–877, 163 Ct.Cl. 1, 6–7 (1963).

> Where the Government draws specifications which are fairly susceptible of a certain construction and the contractor actually and reasonably so construes them, justice and equity require that that construction be adopted. Where one of the parties to a contract draws the document and uses therein language which is susceptible of more than one meaning, and the intention of the parties does not otherwise appear, that meaning will be given the document which is more favorable to the party who did not draw it. This rule is especially applicable to Government contracts where the contractor has nothing to say as to its provisions. * * * [Peter Kiewit Sons' Company v. United States, 109 Ct.Cl. 390, 418 (1947).]

This disposition of the case is a fair one to both sides because, interpreting the specifications as he did, plaintiff actually made a substantial reduction in his bid by what he then considered was the value of the timber in the "cleared only" area and which he reasonably thought would become his. He specifically caused a cruise to be made for the express purpose of determining the value of the saw logs in such area. Thus, in effect he

---

2. Trees less than 8 inches in diameter at breast height are referred to as "pulpwood," as distinguished from the 8 inch and larger trees, referred to as "saw logs." There is no controversy between the parties about such pulpwood trees. Even under the old paragraph, they were not regarded as "merchantable timber" by defendant. Plaintiff has removed and sold the pulpwood from the entire project area. Although defendant had a sawmill at the base, it had no facilities for processing pulpwood.

purchased the timber by giving the Government credit for its value in the form of a reduced bid.

■■ Defendant stresses certain actions of plaintiff during the clearing operations as being inconsistent with his present claim as to his original interpretation of the specifications. It asserts that in fact plaintiff treated the logs as belonging to defendant, that this indicates that plaintiff originally interpreted the specifications as defendant now interprets them, and that plaintiff's claim is an afterthought. The "practical interpretation" of the contract by the parties themselves "during performance" is, of course, of "great importance" in resolving disputes involving contract interpretation. Manufacturers Aircraft Ass'n v. United States, 77 Ct.Cl. 481, 521 (1933), cert. denied, 291 U.S. 667, 54 S.Ct. 442, 78 L.Ed. 1057. "Acts of the parties under a contract prior to the time when the contract becomes subject to controversy," and which are inconsistent with their subsequent contentions, "are to be given considerable weight in interpreting the contract." Union Paving Co. v. United States, 115 F.Supp. 179, 185, 126 Ct.Cl. 478, 489 (1953).

■ However, this contention of defendant's is unsupported by the record. The controversy arose before clearing operations even commenced and as a result of defendant's marking the 8-inch trees to be cut and as belonging to it. The clearing operation itself was subsequently conducted under an agreement whereby defendant would retain the timber but would keep tallies by making appropriate entries in "scale" books of the amount of the timber involved. The timber was, consequently, quite naturally treated as defendant's, and no damaging inferences can possibly be drawn therefrom. Of far greater significance in testing plaintiff's original interpretation is his action, prior to bidding, in causing the aforementioned cruise to be made of the timber in the "cleared only" area and then reducing his bid by the substantial amount which he concluded was the value thereof. And his immediate assertion of title to the trees at the very first indication by the Government of its claim to them is itself persuasive evidence of plaintiff's consistent interpretation.

■ After the contracting officer ruled that the timber here in controversy belonged to the Government, plaintiff, under the contract disputes article, appealed the issue to the Armed Services Board of Contract Appeals. The Board affirmed the contracting officer's decision. Defendant contends the Board's decision is entitled to finality. However, the only issue here involved is the proper interpretation of a contract specification. Numerous decisions of this court hold that such an issue is one of law. Therefore, the administrative appeals board decision lacks finality. See W. H. Edwards Eng'r Corp. v. United States, 161 Ct.Cl. 322 (1963) and Beacon Construction Co. v. United States, 314 F.2d 501, 161 Ct.Cl. 1 (1963), and cases therein cited. There was here no testimony submitted to the Board or any Board hearing in the usual sense. The Board simply decided the appeal on a record composed only of the documents, and, noting that "The problem presented is not entirely free from difficulty," based *its* decision *wholly on* a "study of the pertinent contract provisions."

The final problem involves the value of the timber. Here again the parties are in sharp controversy. Plaintiff says that, based on the cruise made prior to the submission of his bid, the value was $75,000, being the product of an estimate of 1,500,000 board feet at the then fair market value, for virgin timber, of $50 per thousand, cut and stockpiled. As indicated, plaintiff in fact reduced his bid by such amount based on this estimated value. Plaintiff further contends that in any event, the Board found the value to be $62,000, a factual finding which, plaintiff argues, amounts to a binding concession on defendant's part and which should be accorded finality.

He says no lesser amount should be awarded.

◼ As noted, this controversy arose between the parties before the trees were cut. It was agreed at the time that an accurate record should be kept of the amount of board feet of lumber that was involved. As a result, the timber in the area in controversy was, after it was cut and prior to its being removed by defendant, "scaled" by defendant's employees, with appropriate entries being made in scale books. Such scaling consisted of actually counting and measuring the logs cut. Plaintiff's representatives were present at such scaling and there is no record of any disagreement concerning the figures contemporaneously entered in the books. Defendant contends that plaintiff's damages should be based on the amount of timber shown by these records, which it argues are far more accurate than the cruise estimate. Based on such figures (and on defendant's fair market value contentions), defendant argues for a valuation of approximately $28,000.

Furthermore, defendant denies that the Board "found" a $62,000 value.

On these issues of the quantity of timber in controversy and the Board's "finding" of value, defendant is correct. On the first issue, the cruise upon which plaintiff relies was a 10 percent one, i. e., only about 10 percent of the area was covered and an estimate of the entire area based thereon. An estimate so grounded is far less accurate than actual counts and measurements of the individual logs cut. In the area in controversy there was some acreage that had very little merchantable timber. Plaintiff shows no substantial basis for not accepting the contemporaneous scale book figures. And on the second issue, it is clear that the reference to $62,000 in the Board opinion does not constitute an acceptable finding as to value. The Board simply stated: "The value of the trees in controversy appears to be in the vicinity of $62,000." Furthermore, the Board took no valuation testimony or, indeed, as hereinabove set forth, any testimony at all, and it is nowhere indicated upon what, if any, valuation data this figure is based.

◼ Plaintiff points to defendant's admission in its original answer of the $62,000 value. However, in view of defendant's denial of such value by its amended answer, permitted to be filed by court order, the original pleading cannot be treated as a damaging admission. "The office of the petition and answer is to permit introduction of the true facts in the record. If something was inadvertently or erroneously admitted, it is not only the right but the duty of the defendant to correct the error." Spiers, Inc. v. United States, 296 F.2d 757, 766, 155 Ct.Cl. 614, 630–631 (1961).

Accepting defendant's figures as to the quantity of the virgin and second growth timber involved, and plaintiff's fair market values pertaining thereto ($50 and $40 per thousand feet, respectively, cut and stockpiled), the value of the timber in controversy is $36,757.48. The details and bases for the computation of this amount are set forth in finding 13.

◼ Defendant filed a counterclaim herein but offered no evidence in support thereof. Accordingly, it should be dismissed.

Consequently, judgment should be entered for plaintiff in the sum of $36,-757.48, and defendant's counterclaim dismissed.