**SCHWEIGERT, INC.**

v.

**The UNITED STATES.**

**No. 26–66.**

United States Court of Claims.

Dec. 15, 1967.

**698**

Marvin P. Sadur, Washington, D. C., attorney of record, and Herman M. Braude, Washington, D. C., for plaintiff.

J. Michael Gottesman, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make recommendation for conclusions of law on plaintiff's motion and defendant's cross-motion for summary judgment. The commissioner has done so in an opinion and report filed on May 18, 1967. Defendant has filed a request for review of the commissioner's report and recommendation and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

In its request for review of the commissioner's report defendant makes a new argument with which the commissioner did not have an opportunity to deal. This point is that "subcontract" is defined in the Federal Procurement Regulations to cover subcontracts of any tier, and that definition should be read into the contract article involved in this case. The court is not persuaded that the cited regulations were intended or designed to apply to situations or clauses like that now before us. There is no general definition of "subcontract" or "subcontractor" but rather a number of separate definitions devoted to special problems. One such definition (Section 1–18, 101(v)) appears to have been incorporated to make clear that, on a termination for convenience, the Government can settle the claims of all subcontractors at any level; the default clause before us has a very different history and a different aim. Another special definition relates to labor surplus areas, still another to equal opportunity in employment. These disparate provisions do not add up to a general definition applicable

across the board, or relevant to the particular issue raised by the present case.

Defendant insists that the trial commissioner's reading of "subcontractors or suppliers" in clause 5(d), with which the court agrees, will lead to a serious deterioration of contractors' overall responsibility for performance of their contracts and a marked increase in the cost of performing Government contracts. This was apparently not the experience of those procuring agencies which, prior to the adoption of the present form of clause 5(d), did not interpret the provision as covering even first-tier subcontractors. In addition, the Government is, of course, free to change clause 5(d) for the future if it believes this fear is well-grounded.

Since the court agrees with the commissioner's report, opinion, and recommended conclusion of law, with a minor modification, as hereinafter set forth, it hereby adopts the same as modified, and as supplemented by the preceding paragraphs, as the basis for its judgment in this case. Therefore, plaintiff's motion for summary judgment is granted, defendant's cross-motion for summary judgment is denied, and judgment is entered for plaintiff in the sum of $4,800.

## OPINION OF COMMISSIONER*

ARENS, Commissioner:

This case, which is before the court on cross-motions for summary judgment, involves the interpretation of Clause 5 (d) of the Government Standard Contract Form 23–A, April 1961 Edition, relating to excusable causes of delay, which reads in pertinent part:

(d) The Contractor's right to proceed shall not be so terminated nor the Contractor charged with resulting damage if:

(1) The delay in the completion of the work arises from unforeseeable

causes beyond the control and without the fault or negligence of the Contractor, including but not restricted to, acts of God, acts of the public enemy, acts of the Government in either its sovereign or contractual capacity, acts of another contractor in the performance of a contract with the Government, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes, unusually severe weather, *or delays of subcontractors or suppliers arising from unforeseeable causes beyond the control and without the fault or negligence of both the Contractor and such subcontractors or suppliers.* (Emphasis provided).

Plaintiff seeks recovery of liquidated damages in the amount of $4,800 which the Government assessed against it because of delay in the installation of air compressors which plaintiff contracted to furnish the Navy. On the date it received the notice to proceed, plaintiff placed its order for the air compressors with Company A which, in turn, promptly placed its order with Company B. The parties agreed that the reason for the delay was the late delivery of the air compressors by Company B. The Board of Contract Appeals of the General Services Administration, in affirming the action of the contracting officer in imposing liquidated damages, held that since the delay on the part of Company B cannot be found to have been due to a cause which was unforeseeable and without its fault or negligence, plaintiff had not sustained its burden of proof as to excusability under the above provisions of the contract.[1]

In this court plaintiff does not challenge the finding of the Board respecting the fault of Company B, but rests its case exclusively on the Board's interpretation of the contract, which plaintiff alleges, is erroneous as a matter of law.

---

* The opinion and recommended conclusion of law are submitted pursuant to order of the court under Rule 54(b). The necessary facts are stated in the opinion.

1. GSBCA–1378 decided August 30, 1965.

**700**

The question presented is whether, under the above-quoted Clause 5(d), plaintiff is entitled to be excused for a delay arising from unforeseeable causes beyond the fault or negligence of plaintiff and the party with which it is in privity of contract, but which is not from causes which were unforeseeable and beyond the control and without the fault or negligence of a subcontractor with which plaintiff is not in privity of contract.

Stated less precisely, the question is whether plaintiff should be excused for a delay which was solely the fault of a second-tier subcontractor.[2]

In contending for its motion for summary judgment, defendant argues that whether or not a default is excusable is a question of fact, and that the findings of the Board on this question are final and conclusive under the Wunderlich Act. Numerous decisions of this court hold, however, that where, as here, the ultimate determination of liability turns on the proper interpretation of contract provisions, the issue is one of law which this court resolves independently. Southwest Welding & Mfg. Co. v. United States, 373 F.2d 982, 179 Ct.Cl. 39 (1967); United Contractors v. United States, 368 F.2d 585, 177 Ct.Cl. 151 (1966); Blanchard v. United States, 347 F.2d 268, 171 Ct.Cl. 559 (1965).

Defendant cites Whitlock Corp. v. United States, 159 F.Supp. 602, 141 Ct. Cl. 758, cert. denied, 358 U.S. 815, 79 S.Ct. 23, 3 L.Ed.2d 58 (1958), Walsh Bros. v. United States, 69 F.Supp. 125, 107 Ct.Cl. 627 (1947), and related cases in which this court has ruled that prime contractors were not entitled to be excused under clauses similar to that in the instant contract, for delays in performance of the contracts. These cases are inapposite, however, because they involve either instances in which there was privity of contract between the prime contractor and the subcontractor causing the delays, or instances in which the causes of the delays were deemed to be not unforeseeable by the prime contractor or its immediate subcontractor.

In contending for its motion for summary judgment, plaintiff has recited at considerable length the background of the revisions of the default clause in standard Government contracts which strongly indicates that one of the prime purposes, if not the prime purpose of the clause, is to relieve bidders on Government contracts from contingencies over which they have no control and for which they need not include an item in their bids. It is consistent with this purpose, so plaintiff argues, to construe the instant default clause in a manner to limit the inquiry of fault for delays to the prime contractor and its immediate subcontractors and suppliers.[3]

The tenor of Clause 5(d) suggests that the term "subcontractors," in the context in which it is used, means those whom the principal contractor could control or for whom it was contractually responsible, and not those concerning whose conduct and reliability a contractor could only hopefully and helplessly speculate. The weight of authority of the decided cases dealing with similar facts, sustains this view. See: Words and Phrases, Vol. 40 (1964 ed.); United States for Use of Wellman Engineering Co. v. MSI Corp., 350 F.2d 285 (2d Cir. 1965); Aetna Ins. Co. v. Southern Waldrip & Harvick, 198 F.Supp. 505, 507 (N.D.Cal.1961). In the instant contract, the Government, as the author, must shoulder the burden of seeing that the words employed communicate the proper notion, and if it was the Government's intention that the clause was to include those not in privity of contract with plaintiff, it should have specifical-

2. It is clear that the Board opinion is based on the foundation that the delay was solely the fault of Company B. and that both plaintiff and Company A. from which it ordered the air compressors, were without fault.

3. See Government Contracts Monograph No. 9, entitled "Delays, Suspension, Acceleration," published by The George Washington University (1964).

ly said so in the contract. Thompson Ramo Wooldridge, Inc. v. United States, 361 F.2d 222, 175 Ct.Cl. 527 (1966); Industrial Uranium Co. v. United States, 376 F.2d 868, 180 Ct.Cl. ― (1967).

It is therefore recommended that plaintiff's motion for summary judgment be granted, that defendant's motion for summary judgment be denied, and that judgment be entered for plaintiff in the amount of four thousand eight hundred dollars ($4,800).

COLLINS, Judge, took no part in the decision of this case.