## BRISCOE v. UNITED STATES.
### No. 354.

Circuit Court of Appeals, Second Circuit.
May 15, 1933.

See, also, 60 F.(2d) 1068.

Duncan & Mount, of New York City (Frank A. Bull, of New York City, and Arthur C. Muller, Jr., of counsel), for libelant-appellee.

Howard W. Ameli, U. S. Atty., and Tompkins, Boal & Tompkins, all of New York City (Arthur M. Boal, of New York City, of counsel), for the United States.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The respondent's steamer Coahoma County collided with and sank the tug Brittania on March 13, 1931. The collision occurred upon the Hudson river in the territorial waters of New York state. The libelant's husband, who was employed on the tug as an oiler, was drowned as a result of the collision. The libelant brought suit against the respondent in the District Court, under section 130 of the New York Decedent Estate Law (Consol. Laws, c. 13), for negligently causing the death of the decedent. After a trial the District Judge found that the accident was due to the sole negligence of the respondent and entered an interlocutory decree referring

the matter to a commissioner to ascertain and compute the amount which the libelant should recover. Testimony was taken by the commissioner, who submitted a report recommending that an award should be made in the sum of $23,000, with interest thereon at 4 per cent. from the date of the decedent's death to the date of final decree. The respondent filed exceptions to the report, which were overruled by the District Judge, and a final decree in favor of the libelant was rendered. From that decree this appeal was taken. The sole question is whether the damages awarded the libelant are excessive.

The decedent had been employed as an oiler on the Brittania since July, 1929. The parties have stipulated that his average monthly earnings, including base pay and overtime, amounted to $117. In addition, he was given his meals on the tug when it was in operation, and, if he worked when it was not in operation, he received a cash allowance of 80 cents a day for his food. In June, 1929, he had obtained a license as First Assistant Engineer, and was employed in that capacity for about two weeks by the Central Hudson Steamboat Company, losing his position when that company became bankrupt. He had been studying engineering and expected to take his examination for a chief engineer's license in June, 1931. At the time of his death he was just short of 24 years of age, and had, according to the American Experience Tables of Mortality, a life expectancy of 39.49 years. His widow, the libelant, was then 22 years old, with an expectancy of 40.85 years. The decedent left surviving him an infant son about 1 year and 3 months old. The libelant was unable to produce records showing how much of the decedent's salary was turned over to her or applied to the upkeep of herself and the child, but stated that she received "practically all" of his earnings. She testified that her husband personally spent some of the money to pay for his carfare, cigarettes, haircuts, for pressing his suits, and for the purchase of his clothes. She said that his expenses for clothing were slight because he wore working clothes every day except Sunday.

James H. Moran, a shore engineer who had charge of the men in the engineers' department of the company which owned the Brittania, testified that Briscoe was a sober, intelligent, and industrious workman. Both Moran and Dalzell, one of the tug's owners, testified that if Briscoe had received a chief engineer's license he would have been eligible for promotion, and that it was the policy of the company to promote from the ranks rather than to bring in outsiders. Dalzell further stated that, owing to unfavorable business conditions, eight of the company's eighteen tugs were not being operated, so that there was no immediate opportunity for Briscoe's promotion. Moran testified that five men with chief engineer's licenses were working for the company as firemen or oilers.

Section 132 of the New York Decedent Estate Law provides that, in actions brought under section 130, "The damages awarded to the plaintiff may be such a sum as the jury upon a writ of inquiry, or upon a trial, or, where issues of fact are tried without a jury, the court or the referee, deems to be a fair and just compensation for the pecuniary. injuries, resulting from the decedent's death, to the person or persons, for whose benefit the action is brought."

█ It is settled that the New York statute applies to maritime torts committed on the territorial waters' of New York state. Spencer Kellogg Co. v. Hicks, 285 U. S. 502, 52 S. Ct. 450, 76 L. Ed. 903.

█ The cause of action given the administratrix by the statute is for the recovery of compensation for pecuniary injuries to herself as the surviving wife and to the child. It was accordingly necessary to estimate the present value of the sums of money which the decedent might in the future have been expected to turn over to or apply for the benefit of the wife and child.

The commissioner apparently based his calculation upon the life expectancy of the decedent alone, and refused to consider annuity tables based on the joint lives of the decedent and his widow. In this we think he was mistaken. The wife could no more receive pecuniary benefits from her husband if he had lived after her own death than she could after he himself had died. Sider v. General Electric Co., 238 N. Y. 64, 143 N. E. 792, 34 A. L. R. 158. The New York courts have held that the widow's own expectancy is an important factor in determining the damages which she should receive under the statute for the wrongful death of her husband. Wilkinson v. Boehm, 231 App. Div. 295, 247 N. Y. S. 343. Since the death of either husband or wife would terminate the possibility of the latter's receiving pecuniary benefits from the former, tables based upon the joint lives of the two should have been used.

This error, however, is immaterial unless the damages awarded were in fact excessive. In view of the facts disclosed at the hearing before the commissioner, we think it is not

unreasonable to infer that the deceased contributed $100 a month to the support of his family. According to the Combined Experience Table, the value of an annuity of $1, using an interest rate of 4 per cent., based upon two twenty-four year lives, is $15.384. Using this as the basis of calculation, the present value of the sums which the widow might have expected to receive from the decedent in the future would be $18,460.80.

But, under the New York statute, the present value of an annuity based upon the earnings of the decedent at the time of his death is not the sole basis for an award. The amount to be awarded cannot be arrived at purely by mathematical calculation, but is necessarily uncertain and incapable of direct proof. Oddo v. Paterson Bridge Co., 219 App. Div. 518, 220 N. Y. S. 217; Tryon v. Willbank, 234 App. Div. 335, 255 N. Y. S. 27. The deceased's prospects of advancement may be taken into account. Geary v. Metropolitan Street Ry. Co., 73 App. Div. 441, 77 N. Y. S. 54; Drowne v. Great Lakes Transit Corporation (C. C. A.) 5 F.(2d) 58; The Linseed King (D. C.) 48 F.(2d) 311; The City of Rome (D. C.) 48 F.(2d) 333. The fact that the amount to be allowed for such prospects is necessarily indeterminate, and that evidence of actual salaries in higher positions is inadmissible (Geary v. Metropolitan Street Ry. Co., supra), does not make this any the less a proper element of consideration. The deceased was a young man of good capacity studying to equip himself to fulfill more responsible duties. It is true that the period in which his death occurred has been one of acute economic depression, that wage scales have been falling, and that consequently his prospects for immediate promotion were not bright. But we do not think that it should be held that a man of 24, licensed and qualified to fill better positions than that which he occupied at the time of his death, has reached the probable limit of his earning capacity. The commissioner was entitled to base his award in part on the deceased's prospects of increased earnings.

Likewise, the commissioner might take into account the pecuniary value of the nurture of the child and allow for its loss of intellectual, moral, and physical training. McIntyre v. N. Y. Central R. R. Co., 37 N. Y. 287; Tilley v. Hudson R. R. R. Co., 24 N. Y. 471; Id., 29 N. Y. 252, 86 Am. Dec. 297; Mich. Cent. R. R. v. Vreeland, 227 U. S. at page 73, 33 S. Ct. 192, 57 L. Ed. 417, Ann. Cas. 1914C, 176. This amount, too, is indefinite and cannot be arrived at by calculation, but may none the less be properly considered. Apparently the wife is also entitled to recover funeral expenses. Murphy v. New York Central & H. R. R. R. Co., 88 N. Y. 445; Rebmann v. Del., L. & W. R. Co. (D. C.) 275 F. 1009; Steenberg v. Lewis, 221 App. Div. 808, 223 N. Y. S. 444.

The amount awarded by the commissioner is $4,540 more than the present value of the deceased's future contributions to his family based on his present earnings. In view of the foregoing considerations, we think the award is not shown to be excessive.

Decree affirmed.