399 F.2d 936
 Herman J. JONES, as Administrator of the Estate of Lawrence
P. Jones, Deceased, Herman J. Jones and Genevieve
Jones, Plaintiffs-Appellants,
v.
UNITED STATES of America, Defendant-Appellee.
UNITED STATES of America, Third-Party Plaintiff-Appellant,
v.
HAWKES AMBULANCE SERVICE, INC., Third-Party Defendant-Appellee.
HAWKES AMBULANCE SERVICE, INC., Fourth-Party Plaintiff-Appellant,
v.
METROPOLITAN EQUIPMENT CORPORATION and Superior Coach
Corporation, Fourth- Party Defendants-Appellees.
 No. 345, Docket 31883.
 United States Court of Appeals Second Circuit.
 Argued March 20, 1968.
Decided Sept. 4, 1968.
 
 Lionel Alan Marks, New York City, for plaintiffs-appellants; David M. Palley, New York City, on the brief.
 Lawrence W. Schilling, Asst. U.S. Atty. (Robert M. Morgenthau, U.S. Atty. and Alan G. Blumberg, Asst. U.S. Atty., Southern District of New York on the brief), for defendant-appellee and third-party plaintiff-appellant.
 Raymond C. Green, New York City (Joseph M. Soviero, New York City, on the brief), for third-party defendant-appellee-appellant, Hawkes Ambulance Service, Inc.
 Edward L. Milde and James M. Gilleran, New York City, on the brief for fourth-party defendant-appellee, Metropolitan Equipment Corp.
 Sheila L. Birnbaum, New York City (Emile Z. Berman, A. Harold Frost and Howard Lester, New York City, on the brief), for fourth-party defendants-appellees, Superior Coach Corporation.
 Before LUMBARD, Chief Judge, FRIENDLY, Circuit Judge, and BLUMENFELD, District Judge.*
 LUMBARD, Chief Judge.
 
 
 1
 Plaintiffs appeal from a judgment dismissing the complaint after a nonjury trial before Judge Weinfeld in the Southern District of New York. The action was brought under the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671-80, to recover damages for the alleged wrongful death of Lawrence Jones, an employee of Hawkes Ambulance Service, who sustained fatal injuries when he fell from a moving ambulance on March 25, 1963. At the time of the accident Hawkes was rendering ambulance services for the Veterans Administration Hospital in New York City, and Jones was acting as an ambulance attendant in transporting Paul Hefko, a mental patient of the Veterans Administration, from New York City to the Veterans Administration Hospital at Northport, Long Island. Judge Weinfeld found that the United States was negligent in allowing the trip to be undertaken without a trained, experienced ambulance attendant, but that the plaintiffs had failed to establish that this negligence was the proximate cause of Jones' death. He therefore dismissed the complaint. He also dismissed the third-party complaint of the United States against Hawkes and the fourth-party complaint of Hawkes against Superior Coach Corporation, the manufacturer of the ambulance, and Metropolitan Equipment Corporation, its distributor. Both the United States and Hawkes have taken protective appeals from the portion of the judgment dismissing their respective complaints. For the reasons stated below, we reverse the judgment of the district court and remand.
 
 
 2
 The facts, stated in Judge Weinfeld's opinion, 272 F.Supp. 679, are as follows. On March 25, 1963 at about 10:00 A.M., the patient, Paul Hefko, who had a history of mental illness and violent behavior, applied for treatment at the Veterans Administration Hospital at 24th Street and First Avenue in New York City. He was placed in an observation room awaiting examination until about 1:00 P.M. As he was being escorted to the examination, Hefko assaulted the hospital attendant escorting him and attempted to escape. The examining psychiatrist, Dr. Milton Reisner, observing that Hefko was potentially dangerous, asked for a second experienced attendant to be present at the examination. While being watched by the two attendants, Hefko again became violent and attempted to escape. The two attendants subdued him and held him down while a nurse, on Dr. Reisner's instructions, gave Hefko an injection of 50 milligrams of Thorazine, intended to calm and transquilize Hefko for a period of three or four hours. This occurred at about 1:30 P.M. and at about 2:00 P.M. Dr. Reisner completed his examination. He diagnosed that Hefko was suffering from a schizophrenic reaction, chronic paranoid type with acute exacerbation, and directed Hefko's immediate transfer to the Veterans Administration Hospital at Northport, Long Island, about 40 miles distant from New York City. Dr. Reisner testified that the administration of Thorazine was not intended to be a restraint during the transfer of Hefko to Northport. However, in his judgment the injection plus the service of one qualified ambulance attendant to accompany Hefko was adequate to assure his transfer without incident.[1]
 
 
 3
 The ambulance, supplied by Hawkes under contract with the Veterans Administration, arrived at the hospital at about 2:45 P.M., with two of Hawkes' employees: Michael LoMauro, the driver, and Jones, who was to serve as the attendant on the trip. Jones, then two months from his eighteenth birthday, had been engaged by Hawkes eleven days previously as an apprentice oxygen technician. He was without training, education or experience as an ambulance attendant or in the handling of potentially assaultive mental patients.
 
 
 4
 Two hospital employees, Williams and Rogers, whose duties related to the transfer of the patient to the waiting ambulance, observed Jones' youthful appearance and were doubtful whether Jones was sufficiently experienced to handle Hefko, but they failed to call this to the attention of the supervisory or medical personnel. Williams testified that he had warned LoMauro that Jones might not be able to handle Hefko; LoMauro denied that any such warning was given.
 
 
 5
 Hefko at this time was calm; he walked to and entered the ambulance unaided. He sat in the rear seat facing forward, the door to his right being forward of him. Jones sat directly opposite, facing Hefko; their seats were about three and a half feet apart. LoMauro closed the door from the outside, checked to see that it was securely closed,[2] and then got into the driver's seat in the front section of the ambulance and started the trip to Northport.
 
 
 6
 LoMauro testified that the trip was without incident until about 3:45 P.M., when he was proceeding on the Northern State Parkway toward Northport. He then looked in his rear-view mirror and saw Jones standing somewhat stooped over with his back to LoMauro. LoMauro, thinking that something was wrong, called to Jones and simultaneously started to pull over to the right side of the road, hitting his brakes. At that instant, Jones somehow fell or was thrown from the ambulance. LoMauro testified that a split second after he first observed Jones standing hanched over, he saw that Jones was no longer in the ambulance and immediately realized that Jones had fallen out of the door. LoMauro did not see what happened in that split second; he did not actually see Jones fall out or how this occurred. He explained that his subsequent statements that Hefko had thrown Jones from the ambulance were merely 'guesses' as to the cause of the accident. Judge Weinfeld specifically found LoMauro's testimony to be truthful.
 
 
 7
 When the ambulance came to a halt, LoMauro ran back to where Jones was lying on the roadway severely injured and pulled Jones to the side of the road. When LoMauro returned to the ambulance, Hefko was sitting quietly on his seat. After the police arrived at the scene of the accident, they handcuffed Hefko to the stretcher and to a bar in the ambulance. A policeman was assigned to accompany Hefko, and the ambulance proceeded to Northport. On the trip, Hefko lunged several times at the police officer, but was restrained by the handcuffs; he tried to kick the officer and stamp his feet. Soon after his arrival at Northport, Hefko threw a chair at the nurses' aide. He was immediately restrained by being placed in a strait jacket and was given more Thorazine.
 
 
 8
 Jones was taken to Huntington Hospital, where he died on the following day, as a result of injuries sustained in the accident.
 
 
 9
 With regard to the defendant's negligence, Judge Weinfeld stated that 'The Veterans Administration, with respect to patients in its custody or charge and known to be potentially dangerous, was required to exercise reasonable care to protect them from harming themselves or others.' On the question of whether the defendant's agents took adequate and proper safeguards to protect others as well as the patient himself from injury during the course of the journey, Judge Weinfeld found that the injection of 50 milligrams of Thorazine was of sufficient dosage to keep Hefko calm during the trip, and that Hefko's condition did not require the use of physical restraints. However, he found that the administration of Thorazine was not intended to be the sole restraint and that 'the defendant was negligent in allowing the trip to be undertaken without a trained, experienced ambulance attendant, and that Jones was not such a trained attendant, of which the defendant was aware.'
 
 
 10
 However, Judge Weinfeld concluded that the plaintiffs, who were required to establish not only the defendant's negligence but also facts and conditions from which proximate causation may reasonably be inferred, had failed to sustain their burden of proof that the defendant's negligence was the proximate cause of Jones' death. He stated that: 'There is no probative evidence to support plaintiffs' charge that Jones was assaulted by the patient or thrown out by Hefko or was thrown from the ambulance as a result of any act of the patient. To find otherwise upon the evidence here presented, or perhaps more correctly, upon the lack of evidence, would require the court to enter into the realm of speculation and to engage in sheer guesswork.' We do not regard this conclusion as supportable.
 
 
 11
 Under New York law, the plaintiffs in a wrongful death action are not held to as high a degree of proof as where an injured plaintiff can himself describe the occurrence.[3] Noseworthy v. City of New York, 298 N.Y. 76, 80, 80 N.E.2d 744 (1948). We agree with Judge Weinfeld's statement that Noseworthy, however much it may lighten a plaintiff's burden, does not relieve him of establishing the basic facts, direct or circumstantial, either alone or in combination, upon which the inference of proximate cause may reasonably be drawn by the factfinder. However, we disagree with his conclusion that the evidence in this case provides no rational basis for such an inference.
 
 
 12
 It was shown that on several occasions, within a few hours both before and after the accident, Hefko engaged in violent and assaultive conduct. As Judge Weinfeld noted, the prior assaults occurred before Hefko had been tranquilized and the subsequent assaults occurred after Hefko had been subjected to physical restraints. While the occurrence of these assaults does not by itself establish that Hefko committed hostile acts against Jones in the ambulance, we believe that the difference in time or circumstances is not so great as to render them irrelevant and that these incidents must be considered, along with the other relevant evidence, in determining the cause of the accident.
 
 
 13
 Immediately before the accident, LoMauro observed Jones standing hunched over facing Hefko's seat. From this unusual circumstance, it seems only reasonable to infer, as LoMauro did, that something was wrong and that Jones had risen from his seat and assumed this position as a response to some action on Hefko's part. Within an instant after LoMauro observed him in this posture, Jones had fallen from the ambulance. According to the testimony of the hospital attendants, Williams and Weil, Hefko was about 5 feet and 9 or 10 inches tall, weighed about 180 or 190 pounds, and was extremely strong.
 
 
 14
 These circumstances, we believe, provide a rational basis for inferring that Hefko played some part in causing Jones to fall out of the ambulance, whether by actually pushing Jones, or by causing the door to open, or by hostile conduct which caused Jones to do some responsive act or assume a position which resulted in his fall from the ambulance.
 
 
 15
 The district judge found that the evidence suggested other explanations, of equal or even greater probability, as to the cause of the accident. He suggested that the sudden braking and sharp swerve to the right may have caused the door to swing open. This seems unlikely in view of LoMauro's testimony that the door was securely closed when the trip started.[4] The district judge also stated that it was not beyond the realm of reasonable probability that Jones himself may somehow have come into contact with the door handle, or have grabbed the handle to hold his balance when the ambulance swerved, which could be sufficient to open the door when the electric safety lock was not working. However, even if Jones himself inadvertently opened the door, it seems highly unlikely that Hefko had no part in causing the situation. We therefore hold that there was sufficient evidence that Hefko caused Jones' fall from the ambulance and we reject the trial court's conclusion that the plaintiffs had failed to meet their burden of proof on the issue of proximate cause.
 
 
 16
 The defendant argues that there is an alternative basis for affirmance, contending that in allowing Hefko's transfer to be undertaken without a trained, experienced ambulance attendant, the United States did not breach any duty owed by it to Jones. Judge Weinfeld rejected this contention and apparently declined to apply a distinction between duties owed to the public and duties owed to employees of independent contractors. New York law does create such a distinction-- Lipka v. United States, 369 F.2d 288, 292-293 (2 Cir. 1966), cert. denied, 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); Galbraith v. United States, 296 F.2d 631, 634 (2 Cir. 1961); Wallach v. United States, 291 F.2d 69, 72 (2 Cir. 1961)-- and we believe that the distinction must be recognized in the present case. These cases hold that the contractee, while it would be liable to injured members of the public, is not liable to the employees of an independent contractor for its negligent selection of the contractor (Lipka), or for its failure to supervise the contractor's work (Galbraith), or for the contractor's negligence where the work was inherently dangerous and the contractee's duty to take adequate precautions therefore nondelegable (Lipka, Wallach).
 
 
 17
 In the present case, the defendant owed to the public, and to Hefko himself, a nondelegable duty to see that adequate precautions were taken to restrain Hefko during the trip. As to Hawkes' employees, the United States is not liable if its contractual relations with Hawkes justified it in assuming that Hawkes' employees would be capable of handling dangers such as this, as to which they had been alerted.[5]
 
 
 18
 However, it is not clear whether it was Hawkes' obligation under the contract to provide an ambulance attendant with adequate experience to handle Hefko. The contract provides that 'The prices quoted in the Schedule include the services of a chauffeur and an attendant with the ambulance on every trip.' The only requirement states with regard to the attendant is that 'Attendant on duty must be qualified to administer oxygen.' Dr. Moe A. Goldberg, Chief of Psychiatry and Neurology at the Veterans Administration Hospital, testified that he did not make any effort to determine whether or not an attendant with training in restraining psychiatric patients was specified when the hospital let the contract to Hawkes. It may be that an ambulance attendant is ordinarily expected to have such training and that this requirement is included in the meaning of 'attendant' as used in a contract for ambulance service. Indeed, the testimony of Dr. Goldberg and of Rogers, who was in charge of the hospital's travel unit, would appear to support the view that an ambulance attendant is assumed to have such training. However, the contract does not so specify, and the present evidence does not provide any sufficient basis for concluding that the contract required an attendant trained to handle potentially violent and assaultive mental patients.
 
 
 19
 Moreover, even if it was Hawkes' obligation under the contract to provide adequately trained attendants, the defendant nevertheless had the duty to give sufficient notice regarding the patient's condition. Rogers, who had called Hawkes to order the ambulance, testified that he told Mrs. Hawkes that the patient was a psychiatric patient, that he was assaultive and under medication. Mrs. Hawkes denied that Rogers had told her this. Williams, the hospital attendant who accompanied Hefko to the ambulance, testified that he told the driver LoMauro that he would need more help because the patient was violent, had been violent, and Williams didn't think that one man could handle him by himself; Williams testified that LoMauro replied that if anything should happen he would stop the ambulance and give Jones a hand. LoMauro denied that such a conversation had taken place. It appears that Judge Weinfeld accepted Williams' testimony on this question, although elsewhere in his opinion Judge Weinfeld specifically found that LoMauro was a truthful witness. LoMauro testified that Rogers told him that the patient had been sedated and would probably go to sleep; he also testified that as they were walking to the ambulance with Hefko, someone, he didn't remember who, had said that Hefko had caused a commotion.
 
 
 20
 It is for the district court on remand to resolve these contradictions in the testimony and to determine whether, under the circumstances, Hawkes received adequate notice of any unusual dangers presented by Hefko's condition.
 
 
 21
 Reversed and remanded to the district court for consideration of the issues relating to the defendant's duty to Hawkes' employees, and for a determination of the third and fourth party claims, should the district court conclude that the defendant United States is liable to the plaintiffs.
 
 
 
 *
 Of the District of Connecticut, sitting by designation
 
 
 [1]
 Byron Williams, a nursing assistant employed by the Hospital, testified that whenever he accompanied a patient to Northport Hospital a second qualified aid always went with him; he also testified that two qualified nursing assistants always attended patients being transferred between the Veterans Administration Hospital and the psychiatric wards at Bellevue Hospital
 
 
 [2]
 The door was equipped with the ordinary automobile-type handle which was located near the seat occupied by Jones, and lock plunger, which apparently was not depressed when LoMauro closed the door. There was also an electric safety lock which functioned when the ignition was turned on; there were two release buttons to disengage this lock, one located in the driver's compartment, the other on the right armrest panel of the seat occupied by Hefko. There was testimony that the electric safety lock had malfunctioned for some time before the accident
 
 
 [3]
 Hefko had also died prior to the trial, so that even assuming that his psychiatric condition did not preclude him from giving a coherent account of the accident, the testimony of this only other witness to how the accident actually occurred was not available at trial
 
 
 [4]
 Furthermore, since the door was located on the right side of the ambulance, it would seem that it would be a sharp turn to the left, rather than to the right as actually occurred, which might cause the door, if not securely closed, to swing open. Judge Weinfeld noted that after the accident, the door was sprung. However, LoMauro expressly testified that the door was not sprung at the start of the trip, and it seems more likely that the door became sprung when Jones fell or was thrown out of it than that the door had somehow become sprung between the start of the trip and the time of the accident
 
 
 [5]
 As to precautions which were not entrusted to Hawkes, such as the administration of drugs and the provision of physical restraining devices, the defendant's duty in this regard clearly extended to employees of Hawkes as well as to the patient and members of the public. However, the trial judge found that there was no negligence with regard to these precautions