Herman J. JONES, as Administrator of the Estate of Lawrence P. Jones, Deceased; Herman J. Jones and Genevieve Jones, Plaintiffs,

v.

UNITED STATES of America, Defendant.

UNITED STATES of America, Third-Party Plaintiff,

v.

HAWKES AMBULANCE SERVICE, INC., Third-Party Defendant.

HAWKES AMBULANCE SERVICE, INC., Fourth-Party Plaintiff,

v.

METROPOLITAN EQUIPMENT CORPO-RATION and Superior Coach Corporation, Fourth-Party Defendants.

No. 64 Civ. 977.

United States District Court
S. D. New York.

Sept. 23, 1969.

Lionel Alan Marks, New York City, for plaintiffs.

Robert M. Morgenthau, U. S. Atty. for Southern District of New York, New York City, for defendant and third-party plaintiff United States of America; Lawrence W. Schilling, Asst. U. S. Atty., of counsel.

Herbert Lasky, New York City, for third-party defendant and fourth-party plaintiff Hawkes Ambulance Service, Inc.; Raymond C. Green, New York City, of counsel.

Edward L. Milde, New York City, for fourth-party defendant Metropolitan Equipment Corporation; Robert G. Burkhart, New York City, of counsel.

Berman & Frost, New York City, for fourth-party defendant Superior Coach Corporation; Abraham D. Shackton, Sheila L. Birnbaum, New York City, of counsel.

EDWARD WEINFELD, District Judge.

This Court found plaintiffs had sustained their burden of proof that the defendant, United States of America, "was negligent in allowing the trip to be undertaken without a trained, experienced ambulance attendant, and that Jones was not such a trained attendant, of which the defendant was aware,"[1] but had failed to sustain their burden on the issue of proximate cause and accordingly dismissed the complaint upon the merits and awarded judgment in favor of defendant. Upon plaintiffs' appeal, the Court of Appeals disagreed with this Court's finding on the issue of proximate cause. It held, "there was sufficient evidence that Hefko caused Jones' fall from the ambulance and we reject the trial court's conclusion that the plaintiffs had failed to meet their burden of proof on the issue of proximate cause."[2] Seemingly, with both negligence and proximate cause decided in plaintiffs' favor, the only issue remaining was that of damages. But the Court

---

[1] Jones v. United States, 272 F.Supp. 679, 681 (S.D.N.Y.1967). Familiarity with the Court's prior decision is assumed.

[2] Jones v. United States, 399 F.2d 936, 941 (2d Cir. 1968).

did not remand for assessment of damages. Instead, citing its own authorities[3] that New York law makes a distinction between duties owed to the public at large and duties owed to employees of independent contractors, the Court held that as to Hefko and the general public the government was under a nondelegable duty to see that adequate precautions were taken to restrain Hefko during the trip, but that "[a]s to Hawkes' employees, the United States is not liable if its contractual relations with Hawkes justified it in assuming that Hawkes' employees would be capable of handling dangers such as this, as to which they had been alerted."[4] The Court, however, was of the view that it was not clear whether Hawkes was obligated under the contract to provide such an adequately trained ambulance attendant; accordingly, it reversed and remanded for consideration of this and other issues related to the defendant's duty to Hawkes' employees. These issues include (1) whether Hawkes was obligated under the contract between it and the defendant to provide an ambulance attendant qualified to handle potentially violent and assaultive mental patients such as Hefko, and (2) if Hawkes was so obligated, whether the defendant gave adequate notice to Hawkes of Hefko's condition.

Preliminarily, the defendant questions the scope of the judgment of reversal. It contends: "The Court of Appeals did not hold that defendant's negligence was a proximate cause of the accident"; it urges that the issue is still open. The hard core of the government's position is that although the Court of Appeals held the evidence was sufficient to establish that some act or conduct of Hefko caused the accident, it did not decide that the defendant's negligence in allowing the trip to be undertaken when it knew that Jones was an inexperienced attendant was the proximate cause of Jones' death. In this Court's view, the issue was concluded by the Court of Appeals. The broad language that "we reject the trial court's conclusion that the plaintiffs had failed to meet their burden of proof on the issue of proximate cause" leaves no room for such argument.[5] A fair reading of the opinion and the above quoted language make it clear the Court deemed that a trained and experienced attendant would have been equal to the task of handling and, if necessary, restraining Hefko, thereby forestalling the cause or causes which resulted in the disastrous event. In short, the fatal accident would not have occurred but for Jones' lack of training and experience in the handling of potentially dangerous patients. Thus, we turn to the remanded issues referred to above.

Under the remand, the construction of the contract between Hawkes and the government is crucial, since the Court of Appeals held that defendant's liability rests upon "whether it was Hawkes' obligation under the contract to provide an ambulance attendant with adequate experience to handle Hefko."[6] But, after reviewing the applicable provisions of the contract and testimony relevant to the issue, that Court also held that "the present evidence does not provide any sufficient basis for concluding that the contract required an attendant trained to handle potentially violent and assaultive mental patients."[7] In the absence of additional proof, this Court would not be justified in reaching a different conclusion. At the remand hearing all parties rested without offering additional evidence. Thus the question of which party bears the burden of proof on the

3. Lipka v. United States, 369 F.2d 288 (2d Cir. 1966), cert. denied 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 997 (1967); Galbraith v. United States, 296 F.2d 631 (2d Cir. 1961); Wallach v. United States, 291 F.2d 69 (2d Cir.), cert. denied, 368 U.S. 935, 82 S.Ct. 373, 7 L.Ed.2d 197 (1961).

4. 399 F.2d at 941–942.

5. 399 F.2d at 941.

6. 399 F.2d at 942.

7. *Ibid.*

terms of the contract is of vital significance.

■ The United States and Hawkes were parties to the contract; they, and not Jones, are responsible for any ambiguities or lack of specificity therein. The defendant offered no proof that the contract, or any practice or custom, or any other circumstance obligated Hawkes to provide attendants who would be capable of handling dangerous patients or justified the defendant in assuming that Hawkes was so obligated. Plaintiff, a total stranger to the agreement, should not have the burden of establishing its interpretation or the intention of those who brought it into being. By any standard of fair play, let alone logic, the parties to a questioned document, and not a stranger, should carry the burden of establishing its meaning. And this is particularly so where, as here, the defendant seeks to shield itself from liability by contending that, having hired an independent contractor and delegated functions to it, it thereby relieved itself of a duty otherwise owing to Jones. The defendant must, "if responsibility is to be escaped * * * show how and why it was shifted to some one else. Escape from responsibility through the delegation of duty to another is a defense to be proved, not a privilege presumed."[8]

■ Absent additional evidence on the contract, and in light of the Court of Appeals' ruling that the record before it did not support a finding favorable to defendant on this issue, this Court holds that the defendant has failed to carry its burden of proof that it delegated to Hawkes the duty it owed to Hawkes' employees to safeguard them from the unpredictable actions of potentially violent and assaultive patients.[9] It has also failed to establish its defense that Jones was contributorily negligent.[10] Accordingly, the defendant is held liable and plaintiffs are entitled to recover damages.

■ New York law limits damages in a wrongful death action to the pecuniary loss sustained by the next of kin for whose benefit the action is brought.[11] At the outset it is to be recognized that the determination of the future pecuniary benefits of which next of kin have been deprived does not lend itself to mathematical precision and invokes elements necessarily uncertain in nature; nonetheless, when warranted by evidence, an award is justified.[12]

Lawrence Jones at the time of the accident and his death was within two months of his eighteenth birthday. He was survived by his father, then aged forty-seven years, and mother, whose age was forty-one. He lived at home

8. Hooey v. Airport Constr. Co., 253 N.Y. 486, 490, 171 N.E. 752, 754 (1930); accord, Rusin v. Jackson Heights Shopping Center, Inc., 58 Misc.2d 107, 109, 294 N.Y.S.2d 902, 905 (Sup.Ct.1968). See also Caspersen v. La Sala Bros., 253 N.Y. 491, 171 N.E. 754 (1930).

9. While this determination makes it unnecessary to consider the further remanded question, whether Hawkes received adequate notice of any unusual dangers presented by Hefko's condition, the Court finds that it did not.

10. Since experienced hospital personnel in immediate charge of Hefko, aware of his condition and Jones' lack of experience, permitted the trip to go forward, it is almost absurd to contend, as defendant does, that a 17-year old boy was contribu-

torily negligent in carrying through his assignment or that he voluntarily assumed the risks involved in transporting Hefko.

11. N.Y. Decedent Estate Law, McKinney's Consol.Laws, c. 13, § 132.

12. Cf. Briscoe v. United States, 65 F.2d 404, 406 (2d Cir. 1933); Petition of Marina Mercante Nicaraguense, S. A., 248 F.Supp. 15, 26 (S.D.N.Y.1965), modified on other grounds, 364 F.2d 118 (2d Cir. 1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967); Sider v. General Elec. Co., 238 N.Y. 64, 69, 143 N.E. 792, 34 A.L.R. 158 (1924); Oddo v. Paterson Bridge Co., 219 App.Div. 518, 521, 220 N.Y.S. 217, 220 (2d Dep't 1927).

with his parents, a twin brother and three sisters.

Lawrence dropped out of high school in June 1961, when he was just sixteen years of age. He was an unskilled worker; his work record was episodic and earnings were on the low side. Until he started to work for Hawkes as an apprentice oxygen attendant, he held five jobs, from September 4, 1961 to January 22, 1963, principally as a stock clerk or stock boy. His earnings over that entire period, about seventeen months, totalled $1,507, which, pro rated, reflects earnings of approximately $21 per week, although his weekly earning capacity when actually employed was higher. While employed by one of the five firms, where he remained for two months, Lawrence's mother testified he gave her $15 per week.

Lawrence's employment with Hawkes was at a higher salary than in any previous job. It commenced on March 14, 1963, and the accident occurred eleven days thereafter. Within that period his earnings amounted to $138. His mother testified that while employed by Hawkes he contributed $25 per week derived from his unemployment insurance check, since he had received only $21 from Hawkes up to the time of the accident; the balance of his wages, $117, was paid after his death.

Plaintiffs' contention that Lawrence's contributions had been at the rate of $1,250 per year, or $25 per week, is not supported by the record. There were periods of unemployment. He was the recipient of unemployment insurance payments, and the mother, who was employed, as was the father (except for a brief period), acknowledged she gave him funds when he was out of work. On the other hand, it appears that he was a devoted son and made contributions whenever he worked, consistent with his earnings, which, as already noted, prior to his working for Hawkes, were limited. His job with Hawkes as an apprentice oxygen attendant interested him and appears to have set him for the first time on a course of regular employment, and at a substantially higher wage than he had previously earned. In the light of these higher wages, it is probable that his contributions at the beginning would have been not less than $25 per week and gradually increased, from which contributions should be deducted, during his minority, $10, the expense of his support and maintenance.[13]

▆ Lawrence was single at the time of his death. His devotion to his parents, both of whom worked to meet the family needs, suggests that after reaching his majority he would have continued to make payments to them, and as his earnings increased, in additional amounts [14] until such time as he married, when, in view of his limited earning capacity, most of his income would be required for the support and maintenance of his new family. While no evidence was offered as to likely matrimony, there was testimony that Lawrence was not without interest in the distaff side; matrimony was a reasonable probability by the time he reached his late twenties.[15] Accordingly, the Court

13. Keenan v. Brooklyn City R. R., 145 N.Y. 348, 350, 40 N.E. 15 (1895); Fornaro v. Jill Bros., 42 Misc.2d 1031, 1033, 249 N.Y.S.2d 833, 835 (Sup.Ct.), rev'd on other grounds, 22 A.D.2d 695, 253 N.Y.S.2d 771 (2d Dep't 1964), aff'd, 15 N.Y.2d 819, 257 N.Y.S.2d 938, 205 N.E. 2d 862 (1965).

14. Briscoe v. United States, 65 F.2d 404, 406 (2d Cir. 1933); Rogow v. United States, 173 F.Supp. 547, 560 (S.D.N.Y. 1959); Zaninovich v. American Airlines, Inc., 26 A.D.2d 155, 158, 271 N.Y.S. 2d 866, 871 (1st Dep't 1966); Connaughton v. Sun Printing & Publishing Ass'n, 73 App.Div. 316, 317, 76 N.Y.S. 755, 757 (1st Dep't 1902); Horton v. State, 50 Misc.2d 1017, 1022, 272 N.Y.S. 2d 312, 318 (Ct.Cl.1966).

15. In 1967, 45.2% of American males in the age group 20 to 24 were married; in the age group from 25 to 29 the figure jumps to 82.9%. Marital Status of the Population by Age and Sex: 1967. U. S. Bureau of the Census, Statistical Abstract of the United States: 1968, chart No. 36, p. 32 (89th ed.) Washington, D.C. 1968. The defendant itself proposed

finds that from March 26, 1963 to June 3, 1966 (decedent's twenty-first birthday), the parents were deprived during half that period of $15 per week (net) and the remaining half of $20 per week (net), a total of $2,905; that thereafter and until the date hereof they were deprived of contributions of $30 per week, a total of $5,130. In addition, the Court finds that thereafter, i. e., from the date hereof, the decedent would have continued such $30 weekly payments to his parents, or to the survivor, until approximately June 3, 1973, his twenty-eighth birthday, a total of $5,820, which, discounted appropriately, yields a present value of $5,277;[16] that upon his probable marriage, no later than his twenty-eighth birthday, in view of his increased obligations as head of his own family, payments to his parents would have been discontinued. Plaintiffs' funeral and medical expenses of $2,098.28 are not in dispute. Accordingly, the total award for pecuniary damages is $15,410.28.

In addition, plaintiffs are entitled to an award for decedent's conscious pain and suffering. Lawrence was partially conscious immediately after the accident and was moaning and groaning, which may be taken as an indication of pain, even in his semi-conscious condition.[17] The doctor who examined and operated on decedent, whose opinion this Court accepts, was of the view that Lawrence experienced and was conscious of pain immediately after the accident. He died one day thereafter following brain surgery. The Court awards $1,500 for conscious pain and suffering.[18]

Accordingly, judgment may be entered in favor of the plaintiffs and against the defendant in the total sum of $16,910.28.

We next consider the claim of the defendant, United States of America, as third-party plaintiff, that it is entitled to indemnity from Hawkes, third-party defendant, based upon (1) breach of implied warranty of workmanlike performance; (2) New York common law; and (3) the express terms of the contract between it and Hawkes. For reasons discussed below, the United States fails in its claim over.[19]

a finding: "The likelihood is that the decedent would have married * * *" (but urged that this would eliminate contributions entirely). Proposed Finding 31.

16. Discounted at 5% interest compounded annually, taking into account the probability of survival of the decedent and his mother or father, based upon their joint life expectancies. Briscoe v. United States, 65 F.2d 404 (2d Cir. 1933). As calculated from Tables VI, VII and VIII of Actuarial Values for Estate and Gift Tax, U. S. Treas. Dept., Internal Revenue Service, Publication No. 11 (Rev. 5–59).

17. Cf. Kinner v. Kuroczka, 12 A.D.2d 383, 212 N.Y.S.2d 479, 481–482 (3d Dep't 1961).

18. Substantial awards have been allowed in this Circuit for brief periods of pain and suffering. See Petition of the Diesel Tanker A. C. Dodge, Inc., 282 F.2d 86, 88 (2d Cir. 1960) ($5,000 award; tanker sank within 5 minutes; decedent enveloped in flames just prior to sinking); Civil v. Waterman S. S. Corp., 217 F.2d 94, 96, 99 (2d Cir. 1954) ($1,500 award; decedent stabbed during an altercation and "died soon thereafter"); Meehan v. Central R. R., 181 F.Supp. 594, 625–626 (S.D.N.Y.1960) ($10,000 award under New Jersey law for drowning when railroad car in which decedent was riding fell into river). New York courts have also granted significant recoveries. See McBride v. State, 52 Misc.2d 880, 889, 277 N.Y.S.2d 80, 90 (Ct.Cl.1967) ($3,000 award; decedent's death from hanging was "almost immediate" and the period of pain "short"), aff'd mem. on other grounds, 30 A.D.2d 1025, 294 N.Y.S.2d 265 (3d Dep't 1968).

19. With respect to two of its indemnity claims, the one based upon an implied obligation of workmanlike service and the other upon the express terms of the contract between it and Hawkes, the government contends that federal law governs. When Judge Bonsal denied Hawkes' motion to dismiss the government's third-party complaint, he held: "[I]t is well established that Federal law applies to questions arising under government contracts." This Court, however, is free to pass upon the question

The claim that Hawkes breached an implied warranty of workmanlike service is two-pronged: (1) the incompetence and inexperience of Jones to act as an ambulance attendant; and (2) the transportation of Hefko in an allegedly defective ambulance. We consider each separately.[20]

anew. *See* Dictograph Prods. Co. v. Sonotone Corp., 230 F.2d 131, 134–135 (2d Cir.), cert. dismissed, 352 U.S. 883, 77 S.Ct. 104, 1 L.Ed.2d 82 (1956). Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943), and United States v. County of Allegheny, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209 (1944), the cases relied upon by Judge Bonsal, did not involve the Federal Tort Claims Act, which specifically subjects the United States "to tort claims, in the same manner and to the same extent as a private individual under like circumstances," 28 U.S.C. § 2674, to be determined "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). Thus, at least as to tort claims, the United States may be subjected to the "disparities, confusion and conflicts" of state law. United States v. County of Allegheny, *supra*, at 183, 64 S.Ct. 908. Since government liability for tortious conduct turns on state law, the need for uniformity of interpretation of federal contracts in instances where they may play a role on the tort liability issue is not so apparent. *See, e. g.,* Montellier v. United States, 315 F.2d 180, 184–185 (2d Cir. 1963), where in a Federal Tort Claims Act suit the government sought to defeat liability based upon a release, the validity and effect of which it contended was to be determined by federal law. The Court rejected this contention and instead, applying Massachusetts law, held the release was ineffective. However, the issue need not be resolved, since state contract principles do not yield different results from the application of general federal law of contracts in the interpretation of agreements or of indemnity obligations, whether express or implied. *See* notes 23, 31–34 *infra;* Blockston v. United States, 278 F.Supp. 576, 583–584 (D.Md.1968).

**20.** The government asserts the existence of an implied warranty of workmanlike performance in its contract with Hawkes, thus raising the question of implying warranties of performance in nonmaritime contracts. Without passing upon the issue, the Court has assumed, as contended for by the government, that a warranty of workmanlike performance was implicit in its agreement with Hawkes, but has found no breach. However, it is noted the government's position is bottomed upon Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its progeny, Crumady v. The Joachim Hendrik Fisser, 358 U.S. 423, 79 S.Ct. 445, 3 L.Ed.2d 413 (1959), and Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964). The underlying rationale of those authorities centers about the shipowner's nondelegable duty to supply a seaworthy vessel, and the stevedore's conduct that rendered the vessel unseaworthy, thereby casting the shipowner in liability. Indemnity in those cases was imposed upon the stevedore because of its breach of the implied warranty of workmanlike performance. It is not without interest that the Supreme Court has bypassed the question of warranties arising under nonmaritime contracts, and in contrast emphasized the special nature of the indemnity under maritime contracts. In Italia Societa Per Azioni di Navigazione v. Oregon Stevedoring Co., *supra*, at 324, 84 S.Ct. at 754, the Court stated: "Both sides press upon us their interpretation of the law in regard to the scope of warranties in nonsales contracts, such as contracts of bailment and service agreements. But we deal here with a suit for indemnification based upon a maritime contract, governed by federal law, * * * in an area where rather special rules governing the obligations and liability of shipowners prevail, rules that are designed to minimize the hazards encountered by seamen, to compensate seamen for the accidents that inevitably occur, and to minimize the likelihood of such accidents. By placing the burden ultimately on the company whose default caused the injury, * * * we think our decision today is in furtherance of these objectives."

Also it is noted that our Court of Appeals only recently ruled that this theory of indemnity is unavailable where the underlying claim is not based on the doctrine of unseaworthiness. Schwartz v. Compagnie General Transatlantique, 405 F.2d 270, 275–276 (2d Cir. 1968). *See also* United States v. Seckinger, 408 F. 2d 146, 149 (5th Cir. 1969). *But see* General Elec. Co. v. Moretz, 270 F.2d 780, 788–789 (4th Cir. 1959), cert. denied sub nom. Mason & Dixon Lines, Inc. v. General Elec. Co., 361 U.S. 964, 80 S. Ct. 593, 4 L.Ed.2d 545 (1960).

The first contention is predicated upon the assumption that Hawkes was obligated to provide a trained and experienced ambulance attendant capable of handling potentially violent and assaultive mental patients. This requires analysis of the nature of the services Hawkes was called upon to perform under the agreement with the defendant. The defendant itself admits that its contract with Hawkes was "for the rendering of ambulance services, not the furnishing of attendants." The defendant disavows any contention that "its contract with Hawkes specified the training and experience ambulance attendants were to possess, or that the terms of the contract can be construed to provide a standard of training and competence." [21]

The contract itself bears out this limiting construction. Only two sections relate to attendants and their qualifications. The first, clause 3, provides:

"*Attendants*: The prices quoted in the Schedule include the services of a chauffeur and an attendant with the ambulance on every trip."

The only reference to qualification is in clause 10:

"*Oxygen*: Adequate equipment and supplies to administer oxygen will be carried at all times when transporting patients in the performance of this contract. Attendant on duty must be qualified to administer oxygen."

There is no showing, nor indeed any contention, that Jones was not qualified to administer oxygen, however unqualified he may have been to grapple with violent patients.

Despite its concession that the essence of the contract was the rendition of ambulance services and not the furnishing of attendants, the government contends that the nature of the ambulance services carried with it an implied warranty that Hawkes would provide an experienced and trained attendant, and Jones' lack of such qualifications constituted a breach of the warranty. It urges that the fact the contract itself specified only that attendants had to be qualified to administer oxygen and stipulated no other qualification is not fatal to its position that "an ambulance attendant is ordinarily expected to have such training [in restraining such potentially violent and assaultive mental patients] and this requirement is included in the meaning of 'attendant' as used in a contract for ambulance service." [22] But upon a review of the contract and the relevant evidence, the Court of Appeals held that this interpretation of the contract had not been established; accordingly, there is no basis for this Court, in the absence of additional proof as to custom, practice or intent of the parties, to sustain the defendant's position. Moreover, the contract, a standard form, was prepared by the government; therefore, any ambiguity as to the reach of the term "attendant" should be resolved against it.[23]

The defendant's further claim of indemnity for breach of an implied warranty of workmanlike service is based upon the contention that Hawkes knowingly transported Hefko in an ambulance with defective electric safety door locks and that the accident would have been avoided had the locks operated properly.

21. Defendant's brief following remand and hearing, p. 12.

22. 399 F.2d at 942.

23. Rentways, Inc. v. O'Neill Milk & Cream Co., 308 N.Y. 342, 348, 126 N.E. 2d 271 (1955); Taylor v. United States Cas. Co., 269 N.Y. 360, 364, 199 N.E. 620, 115 A.L.R. 822 (1936); Evelyn Bldg. Corp. v. City of New York, 257 N.Y. 501, 513, 178 N.E. 771 (1931);

cf. 3 Corbin on Contracts § 559 (1960). The federal law of government contracts does not differ in this respect. See Sternberger v. United States, 401 F.2d 1012, 1021, 185 Ct.Cl. 528 (1968); Sun Shipbuilding and Drydock Co. v. United States, 393 F.2d 807, 816, 183 Ct.Cl. 358 (1968); Schweigert, Inc. v. United States, 388 F.2d 697, 700-701, 181 Ct.Cl. 1184 (1967); Roberts v. United States, Great Am. Ins. Co., 357 F.2d 938, 948, 174 Ct.Cl. 940 (1966).

■ The ambulance was equipped with automatic electric safety locks. This was an extraordinary safety device that Hawkes had installed on its ambulances in addition to the standard manual door lock system; it was not in common use in the industry.[24] Entirely apart from this extra precautionary mechanism, the ambulance was reasonably equipped and safe for transportation of patients with the usual manual door controls and locks. These were functioning properly during Hefko's transportation. Any warranty of workmanlike performance would only require that the ambulance be reasonably fit for its intended service; it would not require an ambulance with an absolutely perfect or tamper-proof lock system.[25] With the normal door locks functioning properly, as they did on the trip, not only was there no breach of warranty, but with respect to defendant's alternative negligence claim, the ambulance, under the circumstances, was not foreseeably dangerous for its service. Moreover, the evidence is not at all persuasive that the automatic lock system had malfunctioned at the time of the accident or that it played any part in the unfortunate occurrence. In the circumstances, Hawkes did not breach any implied warranty of workmanlike performance in supplying and operating the ambulance.

■ Defendant next claims indemnity under New York common law, in principal reliance on *Melodee Lane Lingerie Co. v. American Dist. Tel. Co.*,[26] which would permit the recovery of any amount by which Hawkes' conduct increased the damages recoverable against the United States. Here the government contends Hawkes was negligent in allowing the ambulance to be used with defective electric safety locks.[27] Essential to any recovery under the *Melodee* doctrine is proof that Hawkes was in fact negligent in using an ambulance with defective door locks, and that such negligence was a separate proximate cause of Jones' death. Since there has been a failure of such proof, the claim for recovery under this concept fails.[28]

24. Which is not necessarily conclusive on the issue of prudent conduct. The T. J. Hooper, 60 F.2d 737, 740 (2d Cir.), cert. denied sub nom. Eastern Transp. Co. v. Northern Barge Corp., 287 U.S. 662, 53 S.Ct. 220, 77 L.Ed. 571 (1932).

25. Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550, 80 S.Ct. 926, 4 L.Ed. 2d 941 (1960).

26. 18 N.Y.2d 57, 271 N.Y.S.2d 937, 218 N.E.2d 661 (1966).

27. It is true that prior to the accident the automatic electric safety lock system had malfunctioned intermittently. Hawkes, repeatedly, through experts, sought to have the condition corrected, but the cause of the sporadic malfunctioning was not ascertained until after the accident, when it was corrected. Hawkes exercised reasonably prudent care in its efforts to correct the mechanism. But, in any event, the ambulance was reasonably safe for use with just the usual manual door controls and locks.

28. Moreover, even were Hawkes found to be negligent, it would not necessarily follow that defendant is entitled to indemnity. The *Melodee* case allows indemnity only in the unusual circumstance where two parties are successive and independent rather than joint tortfeasors; the New York Court of Appeals in *Melodee* mentions the classic example in which injuries sustained in an automobile accident are later aggravated by malpractice. 18 N.Y.2d at 66–67, 271 N.Y.S.2d 937, 218 N.E.2d 661. Only because the defendants in *Melodee* were not joint tortfeasors was the party seeking indemnity able to avoid the normal active-passive negligence rule which precludes indemnity where the parties are *in pari delicto. See* Busch Terminal Bldgs. Co. v. Luckenbach S. S. Co., 9 N.Y.2d 426, 431–432, 214 N.Y.S.2d 428, 174 N.E.2d 516 (1961); Inman v. Binghamton Housing Authority, 3 N.Y.2d 137, 146–147, 164 N.Y.S.2d 699, 143 N.E.2d 895, 59 A.L.R.2d 1072 (1957). Acts of omission, as well as commission, may constitute active negligence. *Cf.* Jackson v. Associated Dry Goods Corp., 13 N.Y.2d 112, 117, 242 N.Y.S.2d 210, 192 N.E.2d 167 (1963). In our case, the defendant, in knowingly allowing the trip to go forward without a trained and experienced attendant, was actively negligent. In this circumstance, defendant

■ Finally, defendant seeks indemnity from Hawkes under the express terms of the contract. Since the contract contains no explicit indemnity provision, the defendant relies upon clause 11, which reads:

"*Liability and insurance coverage:* The contractor shall be liable for injuries or damages to persons or property due to acts or omissions of his or any of his employees while performing work under this contract. The contractor shall furnish satisfactory evidence to the contracting officer that the liability referred to herein is adequately covered by insurance to the extent of not less than $100,000.00 for any one accident, and not less than $300,000.00 if more than one person is involved."

Despite the absence of any explicit language of indemnification, the government contends that this provision imposed a contractual obligation upon Hawkes to indemnify it where liability was imposed for the government's own negligence. Other than argument, nothing of probative value has been advanced to support its position. Both sides have urged varying and different meanings for clause 11. The government, perhaps attempting to explain its failure to offer evidence on the issue of the parties' intent with respect to contractual indemnity, questions that it would have been meaningful, and adds "no intent can be proven as a fact," [29] and consequently urges *Porello v. United States* [30] governs and entitles it to contractual indemnity. However, the matter is not so readily dismissed. The New York rule, generally accepted in nonmaritime cases, requires that an indemnity agreement be expressed in unequivocal terms and bars recovery under an ambiguous provision.[31] As Chief Judge Learned Hand summed up the rule, "if the indemnitee means to throw the loss upon the indemnitor for a fault in which he himself individually shares, he must express that purpose beyond any peradventure of a doubt."[32] Since the clause was contained in a standard form prepared by the government, in this instance, too, any ambiguity in its terms should be resolved against it.[33]

■ Even if clause 11 were to be interpreted as an indemnity provision, the government could recover only if Jones' death were due to "acts or omissions of his [Hawkes] or any of his employees [Jones] while performing work under this contract." Since it has been found that Hawkes was not negligent and had not breached any implied warranty of workmanlike performance, and further

could receive indemnity from Hawkes under *Melodee* only if Hawkes were a successive, independent and not a joint tortfeasor. Since this Court has already held that Hawkes was not negligent in any respect, it is not necessary to decide whether, if it were negligent, its tort was joint or successive and independent.

29. Defendant's brief following remand and hearing, pp. 21–22. To be sure, it cannot be proved as an absolute or scientific fact. *But cf.* Commissioner v. Culbertson, 337 U.S. 733, 743 n. 12, 69 S.Ct. 1210, 93 L.Ed. 1659 (1949); United States v. Tateo, 214 F.Supp. 560, 565 and n. 12 (S.D.N.Y.1963).

30. 94 F.Supp. 952 (S.D.N.Y. 1950).

31. Semanchuck v. Fifth Ave. & 37th St. Corp., 290 N.Y. 412, 419–421, 49 N.E.

2d 507 (1943); Thompson-Starrett Co. v. Otis Elevator Co., 271 N.Y. 36, 41, 2 N.E.2d 35 (1936). *See also* Freed v. Great Atl. & Pac. Tea Co., 401 F.2d 266, 269–270 (6th Cir. 1968); General Elec. Co. v. Cuban Am. Nickel Co., 396 F.2d 89, 93–94 (5th Cir. 1968); United States v. Haskin, 395 F.2d 503, 508 (10th Cir. 1968); A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 256 F.2d 227, 229 (2d Cir.), cert. dismissed 358 U.S. 801, 79 S.Ct. 9, 3 L.Ed.2d 49 (1958).

32. Mostyn v. Delaware, L. & W. R. R., 160 F.2d 15, 19 (2d Cir.), cert. denied, 332 U.S. 770, 68 S.Ct. 82, 92 L.Ed. 355 (1947). *See also* Guarnieri v. Kewanee-Ross Corp., 263 F.2d 413, 422 (2d Cir. 1959).

33. This is true under federal and state law. *See* note 23 *supra*.

that Jones was not contributorily negligent, there is no basis for invoking the clause, whatever its interpretation and whether governed by New York or federal law.[34] Here the defendant has not been cast in liability by reason of any act or conduct of Hawkes or its employees, which at once, and entirely apart from other readily apparent substantial differences, distinguishes this case from and renders inapplicable *Porello v. United States*,[35] relied upon by the government as here controlling. The finding that the defendant was negligent in knowingly allowing the trip to be undertaken without a trained and experienced attendant is a determination that it was actively negligent. The defendant's experienced personnel in charge of the transfer of patients in Hefko's condition testified it was customary practice for a second qualified attendant to accompany such patients.[36] The decision that Hefko was to be transported rested with defendant, not with Hawkes; it involved the expertise of defendant and not that of Hawkes. The defendant, fully aware of Hefko's assaultive tendencies and Jones' inexperience, in permitting the trip to be made, created the dangerous condition that exposed Jones to foreseeable and unreasonable hazards that resulted in the accident. No act or omission of Hawkes caused the fatality. Upon all the circumstances, and upon consideration of the claim here advanced, the defendant is barred from recovering indemnity.

The third-party defendant, Hawkes, is entitled to judgment upon the merits dismissing the complaint against it. Accordingly, there is no occasion to decide the claims by Hawkes, as fourth-party plaintiff, against Metropolitan Equipment Corporation and Superior Coach Corporation, the fourth-party defendants, who are entitled to judgment dismissing the complaints against them.

The foregoing shall constitute the Court's further Findings of Fact and Conclusions of Law.

---

34. *Cf.* United States v. Haskin, 395 F.2d 503, 508 (10th Cir. 1968).

35. 94 F.Supp. 952 (S.D.N.Y.1950).

36. *See* 399 F.2d 936, 939 n. 1 (2d Cir. 1968).