TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-96-00364-CR






Robert Conran, Appellant



v.



The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0961320, HONORABLE TOM BLACKWELL, JUDGE PRESIDING






 After the jury found appellant guilty of aggravated robbery, Tex. Penal Code § 29.03
(West 1994), the trial court assessed punishment at confinement for seven years. Appellant asserts three
points of error, contending that error occurred in the trial court because: (1) the evidence was insufficient
to support the verdict; (2) the jury was coerced into its guilty verdict by an Allen charge; and (3) the trial
court failed to grant appellant's motion for a new trial. We will overrule appellant's points of error and
affirm the judgment of the trial court.

 Appellant's challenge to the sufficiency of the evidence is directed to the identification of
appellant as the person who robbed the cashier at Furr's Cafeteria on South Lamar in Austin on the
evening of March 1, 1996. In reviewing the legal sufficiency of the evidence (the factual sufficiency is not
challenged), we must determine whether viewing the evidence in the light most favorable to the prosecution,
any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. 
See Jackson v. Virginia, 433 U.S. 307, 319 (1979).

 Eva Aguilar was working as cashier at Furr's Cafeteria on the evening of March 1, 1996,
when a man she later identified as appellant approached her and said, "Give me the money." When Aguilar
turned to look at the man, "I see that he is pointing a gun at me." The gun was partially covered, but
Aguilar was able to see its barrel. After handing the robber the hundred dollar bills in the register, he
demanded more, and Aguilar gave him the twenties. A subsequent demand for more money resulted in
Aguilar giving the robber the ten dollar bills in the register. During the entire time, the area was well lit. 
Aguilar was looking at the robber's face because her vision of the lower half of his body was blocked by
the check-out counter. Aguilar stated she gave him the money because the gun "was right at my stomach"
and I "felt this man would kill me . . . if I didn't give him the money."

 The following afternoon, Aguilar was working in the serving area when she saw the man
who had robbed her the previous evening. When he realized that Aguilar had seen him, "he dropped his
gaze . . . his hand started trembling . . . he appeared frightened." Aguilar notified the manager, police were
called, and appellant was arrested. After Aguilar made an in-court identification of appellant, she was
asked if she had any doubt about appellant being the robber. Aguilar responded, "If I had any doubt, I
would not be here today."

 Carlos Gomez, a dinner cook at Furr's testified that his attention was drawn to appellant
because he was dirty and unshaven. While Gomez did not witness the actual robbery, he recognized
appellant in the cafeteria the following evening. Gomez was "absolutely certain" that appellant was the
person he had seen in the cafeteria the night of the robbery, and made an in-court identification of appellant
as the person he had seen on these nights. Gomez's description of appellant on the two nights conformed
to that of Aguilar in that both witnesses stated he was wearing a cap on the night of the robbery, a bandana
the following night, was unkempt and unshaven on both occasions.

 Keith Elliott was dining at Furr's around 7 p.m. on March 1, 1996. His attention was
drawn to a man who almost tripped over a small child and bumped into a man with a walker. Elliott
described the man as a stereotype street beggar, longish hair, baseball cap, dirty tennis shoes and generally
unkempt. About thirty seconds to a minute later, he heard a panicky voice over the intercom. 
Subsequently, he saw the cashier showing the manager an empty cash register. Elliott concluded that the
unkempt man had to have been the robber. While he did not get to see the robber's face, he testified that
appellant was about the size of the man he had seen on the night of the robbery.

 It appears undisputed that appellant lived in his old car; the car was searched following
his arrest, and no incriminating evidence was found. Appellant had no prior criminal record. Appellant
testified that he had never been in the Furr's Cafeteria before the night he was arrested.

 Thomas Anderson, Rodney Rhoton, homeless friends, and Frank Kincaid, a framing
contractor, testified on behalf of appellant. All of these witnesses opined that appellant was not the kind
of person to commit robbery. Rhoton and Anderson stated appellant had a good reputation. The defense
witnesses never knew appellant to wear a cap; he always wore a bandana.

 Anderson testified that appellant came to Zilker Park between five and six on the evening
of March 1, 1996, and did not leave until after dark. They were drinking, but did not have enough money
to get drunk. He had never known appellant to have a large amount of money or carry a gun. Anderson
was impeached with a prior burglary conviction.

 Rhoton testified that appellant came to the park about "dusk" on March 1, 1996. He was
with appellant until about seven-thirty or eight that night. Appellant parted company with Rhoton after they
had gone to a Shamrock service station. Appellant told Rhoton that he was going to walk back to his car
in the park.

 Kincaid testified he saw appellant at Barton Springs on March 2, 1996, drank a few beers
with him, arranged for appellant to spend the night with him and clean up. Appellant had no objection to
Kincaid's suggestion that they eat at Furr's. After they had eaten, appellant was arrested outside the
cafeteria. Kincaid stated he did not know appellant well.

 Appellant points to the absence of fingerprints at the scene and the lack of incriminating
evidence on appellant's person or in his car. Appellant emphasizes factors such as none of his friends
having seen him with a gun, and the fact that appellant returned to the scene of the crime the next evening.

 Under the Jackson standard, the reviewing court is not to position itself as a thirteenth juror
in assessing the evidence nor to second guess the determination made by the trier of fact. See Collins v.
State, 800 S.W.2d 267, 269 (Tex. App.--Houston [14th Dist.] 1990, no pet.). The jury may believe
some witnesses and refuse to believe others and it may accept portions of the testimony of a witness and
reject other portions. See Esquivel v. State, 506 S.W.2d 613, 615 (Tex. Crim. App. 1974). Viewing
the evidence in the light most favorable to the verdict, as we must, we hold that any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Appellant's first point
of error is overruled.

 In his second point of error, appellant contends the jury was coerced into its guilty verdict
by the use of an Allen charge. See Allen v. United States, 164 U.S. 492 (1896). An "Allen charge"
refers to supplemental jury instructions that urge deadlocked jurors to forego their differences in order to
reach a unanimous verdict. See Montoya v. Scott, 65 F.2d 405 (5th Cir. 1995).

 The jury in the instant cause appears to have been deliberating a short time. A copy of the
court's charge was handed counsel on the morning of May 30, 1996, the charge was read to the jury, jury
arguments consumed approximately sixty-four pages of the record and the trial court gave the usual boiler-plate instructions following the argument. While the record does not reflect the time the jury began its
deliberations, a note from the jury requesting certain testimony of two witnesses was marked 12:11 p.m. 
The record is silent as to whether the jury took a lunch break, but at 2:25 p.m., the jury sent the trial court
a note, stating: "At present the jury is undecided on the fate of the suspect. How does the court advise
us to proceed at this time?" The trial court gave the jury the following supplemental charge (formal portions
omitted):


You are instructed that in a large proportion of the cases absolute certainty cannot be
expected. Although the verdict must be the verdict of each individual juror, and not a mere
acquiescence in the conclusion of other jurors, yet each juror should show a proper regard
to the opinion of each other.


You should listen, with a disposition to be convinced, to the arguments of the other jurors. 
If a large number of jurors are for deciding the case one way, those in the minority should
consider whether they are basing their opinion on speculation or surmise and not on the
evidence in the case, keeping in mind the impression the evidence has made on a majority
of the jurors of equal honesty and intellect as the minority.


Bear in mind also that if you do not reach a verdict in this case that a mistrial will be
granted and that the case can be tried again to a different jury, but that the next jury will be
in no better position to decide the case than you.


Therefore, you are instructed that it is your duty to decide the case if you can
conscientiously do so. You will now retire and continue your deliberations.



The trial court determined the numerical division of the jury was eight to four and gave this additional
instruction:


You're instructed it is your duty to decide the case if you can conscientiously do so. You
should listen with a disposition to be convinced of the arguments of the other jurors. If a
large number of jurors are for deciding the case one way, those in the minority should
consider whether they're basing their opinion on speculation and not on the evidence. If
you will please retire and continue your deliberations, and we'll probably stay until midnight
unless you reach a verdict.



Appellant did not object nor did he make a motion for a mistrial to either of the supplemental instructions.

 In his motion for a new trial, appellant first alleged the court's instructions were improper. 
Appellant cites authorities which have held, absent a timely objection to the charge, reversible error will
result only if the instruction on its face is so improper as to render misconduct likely or jury misconduct is
demonstrated to have occurred. See Calicult v. State, 503 S.W.2d 574, 576 n.3 (Tex. Crim. App.
1974). The authorities appellant cites predate Almanza v. State 686 S.W.2d 157 (Tex. Crim. App.
1985). Under Almanza, absent a timely objection, the defendant bears the burden of demonstrating that
the error is so egregious that it creates a harm that deprives him of a fair and impartial trial. Id. at 172. We
find it unnecessary to determine the distinction in the two standards, if any, or if the Calicult standard is
still a viable test in light of our disposition of this point of error. At the outset, we note the first supplemental
charge is a standard Allen charge. See Loving v. State, No. 03-95-00343-CR, May 22, 1997 (Tex.
App.--Austin 1997); 8 McCormick, Blackwell and Blackwell, Criminal Forms and Trial Manual § 96.31
(Tex. Practice 10th ed. 1995).

 Jurors Amy Smith and Lois Blackwell testified at the motion for new trial that they changed
their votes to guilty because of the court's instruction. However, both jurors further stated they based their
guilty vote on the evidence they had before them pursuant to the court's instruction. Smith further stated
that she tended to look for the good in everyone and she made herself step away from that emotional
context. Also, she respected the other jurors who were in the majority, and followed the court's instruction
to listen to them.

 Appellant complains of the trial court's second instruction that stated, "We'll probably stay
until midnight unless you reach a verdict." Similar instructions by trial courts have been held noncoercive. 
An instruction to a jury that it would have to "stay out hours before the court could discharge it, and it won't
be until tomorrow," was held not to constitute an abuse of discretion. See Calicult, 503 S.W.2d at 576. 
An instruction by the trial court to deliberate further in an effort to reach a verdict, and "If I don't hear from
you within the next hour you will be hearing from me, okay?" was held to be noncoercive. See Davis v.
State, 709 S.W.2d 288, 291 (Tex. App.--Corpus Christi 1986, pet. ref'd).

 Appellant urges in close cases like the instant cause the Allen charge is more likely to be
coercive. See United States v. Williams, 477 F.2d 894 (5th Cir. 1971). While eye witness identification
may often be suspect, Aguilar had ample opportunity to view appellant in a well lighted area and was
positive about her identification of appellant. Numerous details of her description of appellant were
corroborated by Gomez. While jurors Blackwell and Smith testified that they changed their votes because
of the trial court's supplemental instruction, they both did so because they were instructed to reach a verdict
based on the evidence they had heard, "No court has held that the Allen instruction itself is
unconstitutional." Loving, slip opin. at 11.

 Appellant further urges the "charge as given constituted a comment on the evidence in
violation of the strict prohibition of Tex. Code Crim. Proc. Ann. art. 36.14." Appellant relies solely on this
cursory statement to support his contention. He does not identify the portion of the instruction, nor does
he attempt to offer any brief to support his position. Appellant's statement, standing alone, is inadequately
briefed for consideration. See Tex. R. App. P. 74(f); Goodwin v. State, 799 S.W.2d 719, 723 n.1 (Tex.
Crim App. 1990). We hold that appellant has not discharged his burden under either the Calicult standard
(if still viable) or the Almanza standard to show that the trial court's Allen charge was coercive or that it
abused its discretion in giving the instructions. Appellant's second point of error is overruled.

 In his third point of error, appellant contends the trial court erred in failing to grant his
motion for a new trial based on newly discovered evidence. Appellant introduced the affidavit of Richard
Joseph McLaughlin, the pertinent portion of the affidavit stated:


I know a white male named "Wiley" who sometimes hangs out in the Cedar Grove Pic Nic
area of Zilker Park. Last winter Wiley had a hidden campsite some distance away from
the Cedar Grove Pic Nic area. I stayed with him at that camp site on only one night. I do
not remember when it was this past winter, but I do recall that it was a very cold night. I
recall that a man whom I had just met gave Wiley and I a ride in his car to that camp site
in the green belt area. The man was someone Wiley and I met with homeless people in
Zilker Park.



 Appellant's trial counsel testified at the motion for new trial that appellant told him prior to
trial that he had given people named Rickey and Wiley a ride on the night of the robbery. Counsel went
to places where homeless people live in an effort to locate the people appellant had named without any
success. Newspaper weather reports for March 1, 1996 were introduced showing the low temperature
was 38 and the high temperature was 47 degrees.

 We find the following concise statement of the law governing the granting of motions for
new trial sets the standard for our determination of this issue:


The trial court may, in its discretion, grant a new trial based on newly discovered
evidence. New trials based on newly discovered evidence are not favored, and denial
of the request will not be overturned on appeal absent a showing that the trial court
abused its discretion. To establish an abuse of discretion, the defendant must show: (1)
that the evidence was unknown to him before the trial, (2) that his failure to discover it
was not due to his want of diligence, (3) that it is probably true and its materiality is such
as will probably bring about a different result upon a new trial, and (4) that it is competent,
not merely cumulative, corroborative, collateral, or impeaching.



Freeman v. State, 838 S.W.2d 772, 778 (Tex. App.--Corpus Christi 1992, pet. ref'd) (citations
omitted).

 The affidavit merely reflects that a man he did not know gave affiant and "Wiley" a ride on
a cold night "last winter." We find McLaughlin's statement so tenuous that it is highly unlikely that his
testimony would bring about a different result upon a new trial. Moreover, trial counsel testified that it was
difficult to locate homeless people and homeless people were very reluctant to come to court and testify. 
We hold that the trial court did not abuse its discretion in denying appellant's motion for a new trial. 
Appellant's third point of error is overruled.

 The judgment is affirmed.



 Tom G. Davis, Justice

Before Justices Jones, B. A. Smith and Davis*

Affirmed

Filed: July 24, 1997

Do Not Publish




* Before Tom G. Davis, Judge (retired), Court of Criminal Appeals, sitting by assignment. See Tex.
Gov't Code Ann. § 74.003(b) (West 1988).



 799 S.W.2d 719, 723 n.1 (Tex.
Crim App. 1990). We hold that appellant has not discharged his burden under either the Calicult standard
(if still viable) or the Almanza standard to show that the trial court's Allen charge was coercive or that it
abused its discretion in giving the instructions. Appellant's second point of error is overruled.

 In his third point of error, appellant contends the trial court erred in failing to grant his
motion for a new trial based on newly discovered evidence. Appellant introduced the affidavit of Richard
Joseph McLaughlin, the pertinent portion of the affidavit stated:


I know a white male named "Wiley" who sometimes hangs out in the Cedar Grove Pic Nic
area of Zilker Park. Last winter Wiley had a hidden campsite some distance away from
the Cedar Grove Pic Nic area. I stayed with him at that camp site on only one night. I do
not remember when it was this past winter, but I do recall that it was a very cold night. I
recall that a man whom I had just met gave Wiley and I a ride in his car to that camp site
in the green belt area. The man was someone Wiley and I met with homeless people in
Zilker Park.



 Appellant's trial counsel testified at the motion for new trial that appellant told him prior to
trial that he had given people named Rickey and Wiley a ride on the night of the robbery. Counsel went
to places where homeless people live in an effort to locate the people appellant had named without any
success. Newspaper weather reports for March 1, 1996 were introduced showing the low temperature
was 38 and the high temperature was 47 degrees.

 We find the following concise statement of the law governing the granting of motions for
new trial sets the standard for our determination of this issue:


The trial court may, in its discretion, grant a new trial based on newly discovered
evidence. New trials based on newly discovered eviden